# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

CHELSEA ROUSSEL,         )
on behalf of herself and others   )
similarly situated,          )
                         )
        Plaintiff,       )    Case No. _____
vs.                         )
                         )    **CLASS ACTION COMPLAINT**
PRO TEETH WHITENING CO. LTD.   )
                         )    **JURY TRIAL DEMANDED**
        Defendant.     )
                         )

Plaintiff Chelsea Roussel ("Plaintiff"), on behalf of herself and all others similarly situated, brings this Class Action against Pro Teeth Whitening Co. Ltd. (referred to herein as "Defendant" or "Pro Teeth") and alleges the following based on personal knowledge and the investigation of her counsel:

## I.    INTRODUCTION

1.    This is a consumer Class Action against the Defendant for its false advertising, negligence, and unfair and deceptive marketing practices in connection with the sale of a line of dental products containing activated charcoal.

2.    Activated charcoal is highly porous and has adsorptive qualities that can be useful in certain contexts. In recent years, health and beauty products containing activated charcoal have become a consumer sensation. Marketers, celebrities and social media influencers tout a variety of activated charcoal products for purported detoxifying properties and other enhanced wellbeing and health benefits. Consumers have been willing to pay a premium for these charcoal products.

3.    Pro Teeth sells oral care products containing activated charcoal, including the following products: "Activated Charcoal Teeth Whitening Powder," (also referred to herein as

"**Charcoal Powder**") "Activated Charcoal Teeth Whitening Strips," (also referred to herein as "**Charcoal Whitening Strips**") "Activated Charcoal Mouthwash," (also referred to herein as "**Charcoal Mouthwash**") "Acivated Charcoal Teeth Whitening Toothpaste," (also referred to herein as "**Charcoal Toothpaste**") and "Non-Peroxide Activated Charcoal Teeth Whitening Gel" (also referred to herein as "**Charcoal Gel**").[1] Hereinafter, these products, as well as any other Pro Teeth toothpastes and toothpowders containing activated charcoal that have been available for purchase within the relevant statute(s) of limitations, will be referred to collectively as the "**Charcoal Dentifrices**."[2]

4.     Pro Teeth's claims and material omissions as to the Charcoal Dentifrices are essentially identical and equally misleading, deceptive and unsubstantiated as each one contains the same specially-featured ingredient of "activated charcoal."

5.     Pro Teeth misleadingly and negligently promotes its Charcoal Dentifrices as natural teeth whiteners and detoxifiers that are safe for gums, teeth and enamel (going so far as to describe them as "completely safe" and "certified safe for enamel"), as well as generally effective for dental hygiene and cosmetic benefits, healthy and beneficial for daily, long-term oral care use. Pro Teeth also claims the Charcoal Dentifrices will neutralize bad breath and help provide all-day protection from toxins and stains, as well as strengthen teeth and enamel while protecting and soothing gums. Pro Teeth misleadingly and negligently portrays charcoal as an ingredient with purported detoxifying and adsorptive properties that affect, and are beneficial to, oral health and that effectuate cosmetic and hygiene benefits.

6.     Claims either printed on the product packaging and labeling of the Charcoal Dentifrices or made on their website, on Amazon.com, and elsewhere in extensive online

---

[1] *See generally* https://www.proteethwhitening.co/ (last accessed June 8, 2020).
[2] "Dentifrice" is a term for tooth-cleansing pastes and powders.

marketing and print advertising promote the products with the following: "whitening," "certified safe on enamel," "safe and effective," "naturally safe way to polish teeth," "non-abrasive," "freshens breath," "detoxifying properties," "brightens discoloration," and "RDA score of 77![3]"

7.      Pro Teeth's marketing strategy has been very successful, and the Charcoal Dentifrices have become one of the top sellers in its product category. However, that success is built around messaging that is misleading and deceptive to consumers, and that, in gross negligence, omits material information concerning the safety and efficacy of use of charcoal in oral care.

8.      The Federal Trade Commission ("FTC") requires that marketers ensure that advertising claims are truthful, not misleading, and supported by a reasonable basis before disseminating such claims. The FTC and the Federal Drug Administration ("FDA") further require that, for the types of products and claims at issue, Pro Teeth must have competent and reliable scientific evidence to substantiate its claims.[4]

9.      Despite these and other legal obligations, Pro Teeth did not (and does not) possess the requisite evidence to substantiate its claims concerning the benefits and safety of its Charcoal Dentifrices, as such evidence did not exist at the times it made its claims. Nor does it currently exist.

10.     The consensus of respected dentists, researchers and industry experts weighs against the use of charcoal dentifrices, due to the lack of scientific substantiation on safety and

---

[3] "RDA" is an abbreviation for Relative Dentin Abrasivity. This measurement, according to Pro Teeth's website (*see* https://www.proteethwhitening.co/collections/shop/products/activated-charcoal-natural-teeth-whitening-powder) is a method of measuring the erosive effects of abrasive in tooth pastes on enamel and dentin. The score Pro Teeth's Charcoal Powder received was a 77/250, which they claim means it is "safe on enamel." Not only does the score of 77 mean there is abrasivity that could be harmful to enamel, but Pro Teeth also fails to provide which "global leader in product testing" provided them with this score in the first place.
[4] Similarly, multiple state laws have incorporated applicable federal regulations on "cosmetics," and establish regulatory schemes that parallel and mirror the federal framework. (These obligations are raised herein not in order to seek to enforce any standard of conduct that exceeds that which is required under the federal framework.)

efficacy, as well as risks of harm. For example, in 2017, findings published in the Journal of the American Dental Association (JADA) concluded that there is insufficient laboratory or clinical data to substantiate the safety and efficacy of dentifrice containing activated charcoal and cautioned against its use. In 2019 the British Dental Journal (BDJ) again confirmed a lack of substantiation in the form of scientific, sound and reliable studies. The 2019 BDJ article expressed concern that charcoal toothpastes are a "marketing gimmick" that could, in fact, cause harm to oral health, structures, and aesthetics. Many qualified dental professionals have also spoken out on these findings and other safety, therapeutic and cosmetic concerns, and have cautioned against the use of charcoal dentifrices. Dr. Ada Cooper, a spokesperson for the American Dental Association, recently commented on the lack of safety substantiation (and reported hazards) for charcoal dentifrice and stated: "Just because something is popular doesn't mean it's safe."[5]

11.     Notably, the American Dental Association ("ADA") has not approved *any* charcoal dentifrices for its ADA Seal of Acceptance (the "ADA Seal"). The ADA Seal certifies the safety and efficacy of a dentifrice, based on clinical data and research.

12.     Pro Teeth knew or should have known that many of its claims regarding the Charcoal Dentifrices lacked a credible basis or substantiation, and that they were misleading, deceptive, and/or false. Pro Teeth also omitted material facts, including that scientific literature counter-indicates the safety and efficacy of charcoal in oral care use. Such representations and omissions were material and likely to deceive a reasonable consumer, yet Pro Teeth nonetheless negligently and recklessly proceeded with its opportunistic marketing campaign, and it continues to do so, without regard to the consequences to the deceived consumer.

---

[5] "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/]. (emphasis added).

13.     In addition to its inaccurate, false and grossly negligent claims and omissions on the benefits and safety of the Charcoal Dentifrices, Pro Teeth engaged in multiple deceptive practices to induce consumers to take additional stock in, and rely upon, their marketing claims. For example, Pro Teeth has negligently misled consumers to believe its claims are substantiated and that the Charcoal Dentifrices are "certified" and have been tested and approved by "the global leader in product testing," which, even if true, does not mean this "global leader in product testing" knows anything about charcoal dentifrices and the harmful effects they can have on a consumer's teeth.

14.     Pro Teeth engages in its false advertising and deceptive practices, and generally promotes the brand as exceptionally conscientious of health and safety, in order to secure consumer confidence in the brand and its Charcoal Dentifrices and, more specifically, to induce consumer purchases. Pro Teeth intended for consumers to rely on its claims, which are ubiquitously made in advertising and marketing materials, and printed on the products' packaging and labeling. Pro Teeth knowingly presented its inaccurate claims and engaged in deceptive practices precisely due to Pro Teeth's belief that such conduct was likely to deceive the consumer and induce a purchase in reliance thereon.

15.     Plaintiff and potential class members reasonably relied upon and attributed value to the asserted benefits, efficacy, safety, value and other qualities of the Charcoal Dentifrices, and did not know, nor could they reasonably have known, of Pro Teeth's omissions of material information and misrepresentations, deceptive and false marketing practices, negligent breach of its duties and lack of federally required substantiation on safety and efficacy. As a direct and proximate result of this misconduct by Pro Teeth, Plaintiff and others similarly situated have suffered actual damages, including out-of-pocket losses from their purchases of one or more

Charcoal Dentifrices. Through its negligent and unlawful conduct, Pro Teeth successfully induced Plaintiff and the putative class members to pay for oral care products that (i) do not perform by 'naturally' whitening, detoxifying, adsorbing, strengthening teeth, fighting disease, and other promises; (ii) are not gentle or safe for teeth, gums and enamel, as was represented; (iii) are not of the value and quality for the price premium paid; (iv) do not meet basic oral hygiene needs that other, less expensive dentifrices would; and (v) may in fact be detrimental and harmful to oral health and aesthetics. Furthermore, some consumers have experienced the negative effects that activated charcoal can cause, including discoloration of the gumline, gum irritation, excessive abrasion of tooth enamel and dentin, yellowing of the teeth, and damage to dental implants.

16.     Pro Teeth's false and misleading claims and omissions enabled it to sell the Pro Teeth Charcoal Dentifrices in great quantity.

17.     Pro Teeth prioritizes its own profits and jeopardizes consumers' oral health, safety, and wellbeing when it makes unsubstantiated claims on the safety and efficacy of the Charcoal Dentifrices and fails to make material disclosures. It makes its unsubstantiated health, efficacy and safety claims despite its legal duties to substantiate the same, and to ensure the safety and efficacy of its products. Material omissions include the potential hazards of using charcoal in dentifrice, and that scientific literature counter-indicates the safety and efficacy of charcoal in oral care use. As such, Pro Teeth's conduct in its advertising, marketing, labeling, and sale of the Charcoal Dentifrices was, and continues to be, grossly negligent, wanton and recklessly indifferent to others, substantially injurious to consumers, as well as immoral, unethical, unscrupulous, unconscionable and in contravention of public policy.

18.     Defendant's conduct is in violation of Rhode Island consumer laws and constitutes unlawful practices under the Rhode Island Unfair Trade Practice and Consumer Protection Act (R.I. Gen. Laws §§ 6-13.1-1 *et seq.*).

19.     Defendant's conduct also constitutes a breach of express and implied warranties, and violations of common law including negligent misrepresentation and fraud. Defendant was unjustly enriched as a result.

20.     Plaintiff brings this proposed Class Action on behalf of herself and other similarly situated consumers in the United States who purchased Pro Teeth Charcoal Dentifrices for personal use within the relevant statute of limitations period (the "**Nationwide Class**"), as well as a proposed subclass of members who purchased the Pro Teeth Charcoal Dentifrices in the state of Rhode Island (the "**RI Subclass**"). Together, the Nationwide Class and RI Subclass (and any other alternative class(es) that may be proposed subsequent to this filing) are collectively referred to herein as the "**Classes**"). For the alleged violations of state statutory law and common law, Plaintiff seeks, on behalf of herself and the members of the Classes, to recover compensatory and statutory damages, treble or punitive damages as available, attorneys' fees and costs, as well as declaratory and injunctive relief.

## II.     PARTIES

21.     Plaintiff Chelsea Roussel ("Plaintiff Roussel" or "Ms. Roussel" herein) is a natural person and a citizen of the State of Florida but lived within the District of Rhode Island at the time she purchased Activated Charcoal Teeth Whitening Toothpaste from Pro Teeth on Amazon.com, by which Pro Teeth's U.S. orders are procured and fulfilled by Amazon Fulfillment[6]. She made

---

[6] Amazon Fulfillment is a service whereby a seller sets up an account with Amazon and Amazon holds the seller's product inventory and fills orders as they come in. The seller first sets up a "fullfilment by Amazon" accont (also referred to as an FBA account), then adds products to the "amazon catalog" and specifies the quantity of the FBA inventory. The seller then ships its products to an Amazon fulfillment center, which then holds onto the product and

7

the purchase on March 2, 2018 for $14.99 and had it shipped to her address in Rhode Island. Ms. Roussel saw Pro Teeth's marketing and advertisements online, as well as the product packaging and labeling, and purchased the toothpaste in reliance on Pro Teeth's representations made thereon. These included that the product was natural, would whiten teeth, had detoxifying properties, and was proven safe for enamel. She expected that the product would meet its representations of efficacy, safety, whitening benefits, and the promotion of oral health and high quality. However, Ms. Roussel's expectations, which were based on Pro Teeth's own representations, were not met. She is a consumer who suffered actual damages and injury-in-fact as a result of her purchase of a toothpaste that cannot deliver these promised health and cosmetic benefits. For example, the product had no effect on the color of her teeth and was actually abrading her enamel; it was not of the value or efficacy as represented or worth the price that was paid; it has not been proven safe for use; and it is risky to use and potentially detrimental to oral health. Ms. Roussel became aware of the nature of her claims made herein in the fall of 2019 when she discovered the announcement of a potential class action against purveyors of charcoal toothpastes and other products. Ms. Roussel has standing to assert claims on all the Charcoal Dentifrices sold by Pro Teeth because, while each are different product types, they each contain activated charcoal as a key ingredient, and Pro Teeth's conduct as to all of the Charcoal Dentifrices was identical or substantially similar, as were the claims and omissions made to induce consumer purchases, and the injuries suffered by Plaintiff and by other consumers as a result.

---

fulfills Amazon orders (*See* https://sell.amazon.com/fulfillment-by-amazon.html?ld=SEUSSOAGOOG-sitelink-fba&tag=googhydr-20&hvadid=438282287465&hvpos=&hvexid=&hvnetw=g&hvrand=14166662439859478629&hvpone=&hvptwo=&hvqmt=e&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9026261&hvtargid=kwd-3996722548&ref=pd_sl_3vyrteoo72_b).

22.     If Ms. Roussel could be confident that the labels and advertising of the Charcoal Toothpowders would be truthful and non-misleading and that she could rely upon the veracity of the labeling and marketing claims, she would consider purchasing one or more of them in the future. However, at the present time she cannot be confident in the representations made.

23.     Defendant Pro Teeth Whitening Co. Ltd., a citizen of the United Kingdom, is a personal care products company engaged in the business of selling oral care and teeth whitening products and other products to consumers from its website www.proteethwhitening.co/, through Amazon.com, and through other third-party distributors. Upon information and belief, Defendant Pro Teeth Whitening Co. Ltd. is a subsidiary of Sylphar, NV ("Sylphar"). Sylphar is a citizen of Belgium and holds an extensive portfolio of brands in the consumer healthcare and cosmetics business.

### III.     JURISDICTION AND VENUE

24.     This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), as the amount in controversy exceeds $5 million, exclusive of interest and costs; there are 100 or more class members; and Plaintiff is a citizen of a state different from the Defendant.

25.     This Court has personal jurisdiction over the Defendant because (i) Defendant purposefully availed itself of the privilege of conducting business in Rhode Island; (ii) because it transacts business, and supplies goods and services in Rhode Island; (iii) because many of the acts, claims and omissions giving rise to this action occurred in and were disseminated in the state of Rhode Island; and (iv) because other transactions between Pro Teeth and other putative class members for the sale and purchase of the Charcoal Dentifrices occurred in Rhode Island. Defendant has sufficient minimum contacts with the state of Rhode Island and intentionally availed

itself, and continues to avail itself, of the jurisdiction of this Court through its business ventures, specifically the promotion, sale, and distribution of Pro Teeth products (including the Charcoal Dentifrices) in this state, as well as through print and online advertising and marketing and business targeted at Rhode Island residents.

26.     Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district as Defendant conducts business throughout this district (including promoting, selling, marketing, and distributing the Pro Teeth Charcoal Dentifrices at issue).

### IV.     CLASS ACTION ALLEGATIONS

27.     Pursuant to CAFA and the Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiff brings this lawsuit as a Class Action on behalf of themselves and all other similarly situated members of the Nationwide Common Law Class and the RI Subclass, as defined below. The proposed Nationwide Class, RI Subclass and other alternative subclasses are collectively referred to herein as the "Classes." This Class Action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

The Nationwide Class is defined, subject to timely amendment following discovery, as follows:

> All persons who purchased Pro Teeth Charcoal Dentifrices (toothpastes, toothpowders, mouthwashes, whitening strips, and/or gels) for personal dental use within the United States within the applicable statute of limitations (the "Nationwide Class").

The RI Subclass is defined, subject to timely amendment following discovery, as follows:

> All persons who purchased Pro Teeth Charcoal Dentifrices (toothpastes, toothpowders, mouthwashes, whitening strips, and/or gels) for personal dental use within the state of Rhode Island within the applicable statute of limitations (the "RI Subclass").

28.     Due to the substantial similarity of Pro Teeth's alleged misrepresentations, acts, omissions, and conduct, as well as the injuries suffered by Plaintiff and Class members, as to all product types, the above-proposed Classes are based on purchase of Charcoal Dentifrices. However, in acknowledgement of the differences between the five product types, Plaintiff alternatively proposes Classes specific to each separate product type, as deemed appropriate and as to certain causes of action. As previously pled herein, Plaintiff Roussel purchased a Charcoal Powder product in Rhode Island. However, as previously stated in Section II (Parties) and as further stated infra under the subsection "Typicality," it is believed that each Plaintiff has standing on her own to assert claims on behalf of purchasers of all types of the Charcoal Dentifrices.

29.     Excluded from the Classes are: (1) Defendant and its subsidiaries, affiliates, employees, officers, directors, assigns, and successors, as well as any entities or divisions in which the Defendant has a controlling interest; (2) the Judge to whom this case is assigned to and any member of the Judge's immediate family; and (3) anyone asserting claims for personal injury in connection with the Pro Teeth Charcoal Dentifrices. Plaintiff reserves the right to amend the definition of the Classes if discovery and/or further investigation reveal that the Classes should be expanded or otherwise modified.

30.     **Numerosity**: Each of the Classes are so numerous that joinder of all members is impracticable. The exact number of each of the Classes' members are presently unknown, and can only be ascertained from records maintained by, and in the possession and control of Defendant. However, Plaintiff reasonably estimates that the Nationwide Class consists of tens of thousands of members, and the RI Subclass consists of hundreds or thousands of members respectively.

31.     **Commonality and Predominance**: Common questions of law and fact exist as to all members of each of the Classes, over questions affecting only individual members. Defendant

engaged in a common course of conduct giving rise to the legal claims brought herein by Plaintiff, on behalf of herself and other putative members of the Classes. Similar or identical common law violations, business practices, and injuries are involved. For example, consumers (i) were exposed to the same or substantially similar set of misrepresentations and omissions and packaging, labeling, and marketing; (ii) manifested a similar kind and degree of reliance; and (iii) suffered substantially similar injuries. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

32.     Common questions predominate over any questions affecting only individual members of the Classes and include, but are not limited to, the following:

a.     Whether, in its product packaging, labeling, marketing and advertising, Pro Teeth made false and misleading representations and material omissions;

b.     Whether Pro Teeth made and breached an express warranty to the named Plaintiff and the Classes;

c.     Whether Pro Teeth breached the implied warranty of merchantability;

d.     Whether Pro Teeth engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Charcoal Dentifrices;

e.     Whether Pro Teeth's claims and material omissions concerning the Charcoal Dentifrices were likely to or had a tendency to deceive reasonable consumers;

f.     Whether the labeling, packaging and marketing of the Charcoal Dentifrices deceived consumers into paying a higher price than they otherwise would;

g.     Whether the acts and omissions of Pro Teeth violated the Rhode Island Unfair Trade Practice and Consumer Protection Act;

h.     Whether Pro Teeth should be enjoined from the continued unlawful marketing, advertising, promotion, distribution, labeling, and sale of the Pro Teeth Charcoal Dentifrices;

i.     Whether Pro Teeth was unjustly enriched by the sale of the Pro Teeth Charcoal Dentifrices and the profits earned therefrom should be disgorged; and

j.      Whether the actions of Pro Teeth warrant punitive or multiplied damages.

33.     **Typicality**: Plaintiff's claims are typical of the claims of the proposed Classes, as Plaintiff and all members of the Classes purchased Pro Teeth Charcoal Dentifrices after exposure to the same material misrepresentations and/or omissions appearing on the packaging, on the Pro Teeth website(s), Pro Teeth's listings and claims made on Amazon.com and other online retail platforms, and/or other forms of advertising and marketing. Plaintiff and members of the Classes have suffered the same or substantially similar injuries as a result. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent members of the Classes. As alleged above, each consumer has been exposed to the same or substantially similar deceptive practices regardless of whether they purchased the "Activated Charcoal Teeth Whitening Powder," the "Activated Charcoal Teeth Whitening Strips," the "Activated Charcoal Mouthwash," the "Acivated Charcoal Teeth Whitening Toothpaste," and the "Non-Peroxide Activated Charcoal Teeth Whitening Gel" because: 1) each product contains identical or substantially similar claims and omissions regarding the benefits and safety of activated charcoal; and 2) the inclusion of activated charcoal in each product gives rise to the harms described herein.

34.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel highly experienced in prosecuting consumer class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of members of the Classes and have the resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of the Classes.

35.     **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small size of the claims of the individual members of the respective Classes, absent a class action, most members would likely

find the cost of litigating their claims against Defendant to be prohibitive or impractical. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the time and resources of the courts and the litigants and promotes consistency and efficiency of adjudication. The class action device presents no management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

36.     **Ascertainability**:     The proposed Classes are each defined with reference to objective criteria. A reliable and administratively feasible mechanism exists for the determination of membership of each of the proposed Classes.

## V.     FACTUAL ALLEGATIONS

### A.     Background

37.     Activated charcoal is made from coal, wood, coconut shells, sawdust, bamboo, or similar ingredients. The raw material is superheated, treated with different chemicals, and then superheated a second time with steam.[7]

38.     Activated charcoal has adsorptive qualities that have proven to be useful in certain limited contexts. For decades, it has been used in the emergency medical treatment of certain types of poisonings and drug overdoses, because, when administered correctly, it can adsorb certain heavy metals, drugs and other toxins.[8] The effectiveness of medicinal activated charcoal in the emergency room setting is limited and dependent on specific factors, such as the type of drug or

---

[7]"Activated Charcoal FAQ," General Carbon Corp. [http://generalcarbon.com/facts-about-activated-carbon/activated-carbon-faq/] (last accessed June 26, 2019) (General Carbon Corp. is an activated charcoal manufacturer).
[8]*See generally*, Robert W. Derlet & Timothy E. Albertson, "Activated Charcoal—Past, Present and Future," 145 *West J. Med.* 493 (Oct. 1986)
[https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1306980/pdf/westjmed00158-0063.pdf].

toxin, timing between ingestion of the toxin and ingestion of the medicinal charcoal, and dosage of each.[9]

39.     Activated charcoal has also been used in industrial and environmental settings to extract certain organic and inorganic substances from water.[10] For example, it is sometimes used to remove excess amounts of fluoride from drinking water.[11] It is used in juice manufacturing to control color and remove organic compounds.[12] Activated charcoal can also adsorb water-soluble vitamins, including forms of Vitamins C and B.[13]

40.     Inspired by the use of activated charcoal in these limited and particular contexts, enterprising companies like Pro Teeth have been eager to extrapolate charcoal's adsorptive properties for use in a much broader context, often with little to no substantiation. Products containing activated charcoal are increasingly prevalent and are promoted with vague claims of 'detoxifying' properties as well false or overstated health and beauty benefits. Activated charcoal has been marketed to the public as capable of extracting nearly any undesirable element or substance, and in nearly any context.

41.     Yet, writes Scott Gavura in *Activated Charcoal, The Wellness Scam* (Science Based Medicine, Aug. 8, 2019): "what's popularly called a 'detox' today has nothing to do with actual

_____

[9]*Id.*; *see also* Derlet & Alberston, *supra* note 3, at 493–92 & Table 1; Jennifer A. Lowry, "Use of Activated Charcoal in Pediatric Populations," World Health Organization: Subcommittee of Expert Committee on the Selection and Use of Essential Medicines, Jan. 2008, at 2, [https://www.who.int/selection_medicines/committees/subcommittee/2/charcoal_rev.pdf ] (reviewing literature on medical use of activated charcoal).

[10]*See generally* "The History of Activated Carbon," Jurassic Activated Carbon, Feb. 9, 2014 [https://www.jurassiccarbon.com/blogs/news/12186281-the-history-of-activated-carbon].

[11]Manisha Poudyal & Sandhya Babel, "Removal of Fluoride using Granular Activated Carbon and Domestic Sewage Sludge," 82 *Int'l Proceedings of Chem., Biological, and Envtl. Eng'g* 139 (2015) [http://www.ipcbee.com/vol82/027-IEEA2015-C3024.pdf]; *see also* Behrooz Eftekhar et al., "The Effectiveness of Home Water Purification Systems on the Amount of Fluoride in Drinking Water," *J. of Dentistry, Shiraz U. of Med. Sci.*, Sept. 2015, at 278, (noting that use of home water purification systems, including several using carbon-based filtration methods, reduced the amount of fluoride in water).

[12] Cetin Kadakal et al., "Research Note: Effect of Activated Charcoal on Water-Soluble Vitamin Content of Apple Juice," 27 *J. of Food Quality* 171 (Apr. 2004) [https://doi.org/10.1111/j.1745-4557.2004.tb00647.x].

[13] *Id*.

medical detoxification," and "[f]ake detox, the kind you find in magazines, and sold in pharmacies, juice bars, and health food stores, is **make-believe medicine. The use of the term 'toxin' in this context is meaningless…. but it sounds just scientific enough to be plausible**." [14] Mr. Gavura goes on, "if you hear the words 'detox' uttered anywhere but an emergency room, keep in mind that you're hearing a **marketing pitch, not credible health evidence**." [15] "Despite the marketing hype, activated charcoal has no ability to suck out the toxic chemicals from the rest of your body." [16]

42.     Multiple scientific and consumer publications have made note of this logical fallacy and have debunked the broadly asserted 'detoxifying' properties of activated charcoal (particularly in its most commonly available form as an ingestible supplement). In April 2017, Consumer Reports published *Activated Charcoal Isn't a Magic Health Bullet,* wherein Julia Calderone writes: "In recent years, people have tried to translate the very limited success of activated charcoal in the ER to their everyday lives, assuming that if it can adhere to and remove certain drugs in an emergency room, it can stop all kinds of toxins, making an already healthy person even healthier." [17] Lisa Sasson, M.S., R.D., clinical associate professor of nutrition at New York University is quoted as saying "**this logical leap is not based in science**." [18]

43.     In another example from 2017, the Superfoodly.com website published *Activated Charcoal Uses May Be Harmful, Possibly Cancerous?* stating: "The problem is that none of these cleansing/detox benefits are backed by science…. **using [charcoal] to remove toxins from your body is nonsensical**, unless you literally just ingested poison (and even then, only certain types

---

[14] Scott Gavura, "Activated Charcoal, The Wellness Scam," *Science Based Medicine*, Aug. 8, 2019 [https://sciencebasedmedicine.org/activated-charcoal-the-wellness-scam/ ].
[15] *Id*. (emphasis added).
[16] *Id*. (emphasis added).
[17] Julia Calderone, "Activated Charcoal Isn't a Magic Health Bullet," Consumer Reports (April 13, 2017) [https://consumerreports.org/dietary-supplements/activated-charcoal-fad-not-a-magic-health-bullet/].
[18] *Id*.

will it absorb). There are no clinical trials or peer reviewed research which suggests activated charcoal removes toxins daily when used as a supplement."[19]

44.     Simultaneous with the charcoal trend, consumer demand for teeth-whitening products has risen. The global market for teeth-whitening products is expected to reach $7.4 billion by 2024.[20] Dentists, dental scientists, and researchers have raised concerns about the rapid growth of dental health 'fads,' including the use of charcoal dentifrice, which, even when "there is a lack of . . . scientifically supported information around such items, [] this does not stop them from being used."[21] As Dr. Ada Cooper, a spokesperson for the American Dental Association, recently stated: "**Just because something is popular doesn't mean it's safe**."[22]

45.     Pro Teeth has successfully leveraged the charcoal trend and consumer enthusiasm for teeth whitening with its development, marketing, and sales of its Charcoal Dentifrices.

### B.     Contemporary Scientific Studies Challenge the Safety and Efficacy of Activated Charcoal for Use in Dentifrice

46.     The first use of charcoal for oral hygiene dates back to Hippocrates in ancient Greece.[23] The Romans apparently followed this practice, along with other questionable oral care practices such as rinsing their mouths with urine.[24]

47.      In the United States, there have been several attempts to introduce charcoal as an oral health product. According to commentary published in the Journal of the American Dental

---

[19] "Activated Charcoal Uses May Be Harmful, Possibly Cancerous?," Superfoodly (July 28, 2017) [https://www.superfoodly.com/activated-charcoal-uses-side-effects/].
[20] https://www.hexaresearch.com/research-report/teeth-whitening-products-market.
[21] Marco Antonio Dias da Silva & Anthony Damien Walmsey, "Fake News and Dental Education," 226 *British Dental Journal* 397, 397-99 (2019).
[22] "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/]. (emphasis added).
[23] *See* S.W.B. Newsom, "Hygiene and the Ancient Romans," *J. of Infection Prevention*, at 25, June 2004 [https://journals.sagepub.com/doi/abs/10.1177/14690446040050030601].
[24] C. Valerius Catullus, "On Egnatius of the White Teeth," circa B.C. 84–54, (Tr. Richard Francis Burton, 1894), [http://www.perseus.tufts.edu/hopper/text?doc=Perseus:text:1999.02.0005:poem%3D39] (poem by the Roman poet Catullus referring to the practice of whitening teeth by rinsing with urine).

Association ("JADA") in 1932, a product named "Kramer's Original Charcoal Dental Cream," had been pronounced "not acceptable" as an Accepted Dental Remedies (ADR) by the Council on Dental Therapeutics (the "Council"). The Council found that "[c]linical experiences are recorded in which the particles of charcoal became imbedded in the gum tissue and produced a bluish line near the margin, which is removable only by surgical means."[25] When the Kramer's brand produced no evidence to rebut the clinical results, the Council denied it as an ADR "**because it is a dentifrice intended for daily use that contains charcoal, a potentially harmful substance**."[26]

48.     Decades after the American dentistry establishment officially rejected charcoal for use in dentifrice, the topic has again resurfaced, in light of the burgeoning consumer trend. One study, presented at the Academy of General Dentistry 2015 Annual Meeting, concluded that "activated charcoal was more abrasive than a whitening toothpaste on acrylic resins" and warned that "[t]he fine black charcoal powder may become embedded in defects such as margins or cracks present on older dentition."[27]

49.     In 2017, the Journal of the American Dental Association published a literature review to "examine the efficacy and safety of charcoal and charcoal-based dentifrices." John K. Brooks et al., *Charcoal and Charcoal-Based Dentifrices*, 148 JADA 661 (2017) (referred to herein as "*Charcoal-Based Dentifrices* (JADA 2017)" or "the 2017 JADA article"). The authors, Dr. John Brooks, DDS, Dr. Nasir Bashirelahi, PhD, and Dr. Mark A. Reynolds, DDS, PhD, reviewed the first 50 consecutive charcoal dentifrices from Google.com and Amazon.com to assess how the

---

[25] John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148 JADA 785 (2017), [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)).

[26] *Id.*

[27] Brantley McCarty et al., "Activated Charcoal as a Whitening Dentifrice," Presented at Academy of General Dentistry 2015 Annual Meeting, June 18–21, 2015, San Francisco, CA [https://www.epostersonline.com/agd2015/node/72] (last accessed June 5, 2019).

marketing claims of these products compared with efficacy and safety of charcoal-based dentifrices as found in the available scientific literature.[28]

50. The authors of *Charcoal-Based Dentifrices* (JADA 2017) reviewed advertising claims about the charcoal-based dentifrices on the market and found: "Nearly one-half of the charcoal-based dentifrices were advertised as being capable of detoxification, with most claiming to detoxify the oral cavity or teeth. **Our review failed to identify scientific support in the literature that topical application of charcoal can provide any detoxification benefits to the teeth or oral mucosa.**"[29]

51. The authors of the 2017 JADA article additionally reported that "**[c]harcoal has been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concern about damage to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel**."[30]

52. In conclusion, the authors of *Charcoal-Based Dentifrices* (JADA 2017) stated:

In our literature review, **we found insufficient scientific evidence to substantiate the cosmetic, health benefits** (antibacterial, antifungal, or antiviral; **reduced caries; tooth whitening; oral detoxification**), **or safety claims** of marketed charcoal-based dentifrices. Controlled clinical trials and laboratory investigations of charcoal-based dentifrices . . . are needed to determine product efficacy and safety.[31]

53. In May 2019, the British Dental Journal confirmed that supporting scientific evidence remained lacking, and again raised the same and similar concerns reflected in the 2017 JADA article. Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 BDJ 697, 698

---

[28] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[29] *Id.* (emphasis added). The authors were unable to identify any randomized, controlled clinical trials with a follow-up duration of 3 months or longer testing the safety or effectiveness of charcoal-based dentifrices. All of the available studies lacked adequate controls to measure clinical oral improvements with charcoal-based dentifrices.
[30] *Id.* (emphasis added).
[31] *Id.* (emphasis added).

(2019) (referred to herein as "*Charcoal-Containing Dentifrices* (BDJ 2019)" or "the 2019 BDJ article"). It further noted the tendency for build-up of charcoal particles in surface defects, fissures, and gumline, and resulting poor aesthetic effects.[32]

54.     The May 2019 article in the British Dental Journal, *Charcoal-Containing Dentifrices* (BDJ 2019), concluded that charcoal-based dentifrices "may be considered to be **a fashionable, marketing 'gimmick'**" that is "based on folklore on the use of different forms of charcoal for oral and dental remedies," or improperly based on "present day uses of charcoal for medical purposes."[33] The 2019 BDJ article lamented the prevalent and "**worrying approach**" in the marketing of charcoal dentifrices that places "a strong emphasis on benefits which appeal to consumers, which have yet to be disproved," and that favor a "'scientifically claimed until proved wrong' approach . . . over substantiated, evidence-based promotion."[34] The authors opined that "**the ethics of such an approach to the marketing of health-influencing products is at best questionable**. **False and deceptive messaging, together with the selective provision of information could be classed as misleading practice, contrary to the consumers' best interests and protection**."[35]

### C.     The American Dental Association has Not Approved any Activated Charcoal Dentifrice for its ADA Seal of Acceptance

55.     The American Dental Association ("ADA") was founded in 1859.[36] Per the ADA's description of its mission, the ADA "exists to power the profession of dentistry and to assist our members in advancing the overall oral health of their patients."[37] The ADA presents itself as a

---

[32]*Id.*
[33] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, 698 (2019).
[34] *Id.* (emphasis added).
[35] *Id.* (emphasis added).
[36] https://www.ada.org/en/about-the-ada/ada-history-and-presidents-of-the-ada (last accessed November 18, 2019).
[37] https://www.ada.org/en/about-the-ada (last accessed November 18, 2019).

"strong advocate[] for public health" working with an aim to keep patients "healthy from the dental chair to daily care at home."[38]

56.     In furtherance of the ADA's public health goals, the organization administers the ADA Seal of Acceptance Program ("Seal Program"), which began in 1931.[39] The ADA began the Seal Program to combat "extravagant claims" about what dental products could do.[40] Since that time, the ADA Seal of Acceptance has become "[u]niversally recognized by consumers as a symbol of safety and effectiveness" and "is carried on more than 300 oral health products, including toothpastes, toothbrushes, dental floss, mouth rinses, denture adherents, and chewing gum."[41] Companies can submit dental products to the Seal Program by including "data from clinical or laboratory studies that demonstrate safety and efficacy according to product category requirements developed by the ADA Council on Scientific Affairs."[42] Members of the ADA Council review submissions for adherence to product category requirements and, if necessary, utilize consultants with relevant specific area expertise.[43] Once a product's safety and efficacy has been demonstrated, the ADA Council will award the Seal Acceptance.[44]

57.     A variety of major brands have sought and received the ADA Seal of Acceptance for certain products, including, but not limited to, Crest, Efferdent, ACT, CVS, Equate (Walmart),

---

[38] *Id.*
[39] https://www.ada.org/en/science-research/ada-seal-of-acceptance (last accessed November 18, 2019).
[40] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq, "What is the ADA Seal?" (last accessed November 18, 2019).
[41] https://www.ada.org/en/about-the-ada (last accessed November 18, 2019).
[42] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq, "What determines if a dental product qualifies for the Seal?" (last accessed November 18, 2019).
[43] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq, "How are products evaluated?" (last accessed November 18, 2019).
[44] *Id.*

Listerine, Up and Up (Target), Oral-B, and Colgate.[45] **Significantly, the ADA has not granted the ADA Seal of Acceptance to any product with activated charcoal.**[46]

58.     Pro Teeth has not received the ADA Seal of Acceptance for the products named herein.[47] Based upon the prevailing scientific literature regarding the lack of safety and efficacy of activated charcoal in dental products, Pro Teeth would have been aware of the unsuitability of the ADA Seal of Acceptance for its Charcoal Dentifrices. Nevertheless, it has chosen to make the exact sort of false, deceptive, and/or misleading extravagant claims that inspired the creation of the ADA's Seal Program.

**D.      Pro Teeth's Representations on the Charcoal Dentifrices' Labeling, Packaging, Advertising, and Marketing**

59.     Since at least 2015, Pro Teeth has packaged, marketed, distributed, and sold some or all of its Pro Teeth Charcoal Dentifrices.

60.     Examples of the external cardboard box, product packaging, and labeling for Pro Teeth's Charcoal Powder includes the following:

---

[45] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-shopping-list (last accessed November 18, 2019).
[46] *See* https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-shopping-list (last accessed November 18, 2019).
[47] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-shopping-list (last accessed November 18, 2019).





61.     An example of the product packaging and labeling for Pro Teeth's Charcoal Toothpaste includes the following:



62.     An example of the product labeling for Pro Teeth's Charcoal Mouthwash includes the following:



63.     Examples of the product labeling for Pro Teeth's Charcoal Whitening Strips include the following:

24





64.     Examples of the product labeling for Pro Teeth's Charcoal Gel, which is sold as part of a Pro Teeth whitening kit, include the following:







65.   The Pro Teeth website includes the following representations regarding Pro Teeth's

Charcoal Dentifrices:









| Description | Details | Ingredients | FAQ's |
| --- | --- | --- | --- |

Our teeth whitening polish is made with premium finely ground food grade activated charcoal, ideal for dental use and non-abrasive. Bentonite clay aids the charcoal's work, absorbing heavy metals and delivering essential minerals, while peppermint helps soothe gums, fight bacteria, reduce inflammation and add freshness.

This product is suitable for even those with sensitive teeth and gums. It can be used as often as needed to achieve your desired teeth whitening results.

**Put a pinch of powder in the palm of your hand and dip a wet toothbrush into powder. Brush teeth for one to two minutes, then rinse. Brush again with water to remove residue. Use twice daily for best results.**

*Want to know more about Activated Charcoal for Teeth Whitening? Read more...*

**HANDCRAFTED IN SMALL BATCHES (60ML/2OZ)**

Description | INGREDIENTS | DIRECTIONS

**Our Activated Charcoal mouthwash contains natural ingredients which work together to create a detoxifying solution that helps remove stains, bad breath and leaves your mouth feeling fresh.**

Activated Charcoal has been used for centuries as a method of whitening teeth, we have carefully formulated this mouthwash with Activated Charcoal to help lift stains and leave breath feeling fresher for longer.

Description | Details | Ingredients | Directions

At Pro Teeth Whitening Co our aim is to provide high quality, safe and effective teeth whitening products at affordable prices. Our Premium Dental Whitening Strips remove stains and discolouration from the surface of your teeth to significantly whiten and brighten your smile.

Activated charcoal is used today and has been used throughout the centuries to treat people who have accidentally ingested poison - with its porous surface, it attaches to toxins and impurities in the body to draw them out.

It works in just the same way on plaque, tannins and stains on teeth - safely and efficiently lifting these off!

| Description | Details | Ingredients | Directions |
|---|---|---|---|

**Pro Teeth Whitening Co. Activated Charcoal Teeth Whitening Toothpaste Helps Polish the Surface of Your Teeth to Significantly Whiten and Brighten Your Smile. Removes Stains and Leaves Your Mouth Feeling Clean and Refreshed.**

**ACTIVATE FRESHER BREATH**

Refreshing Minty Taste, Long Lasting All Day Freshness. Helps Neutralise Bad Breath Bacteria.

**100% NATURALLY DERIVED INGREDIENTS**
Our Advanced Formula Contains Naturally Derived Ingredients To Help Provide All Day Protection From Toxins and Stains.

**SAFE ON ENAMEL AND FLUORIDE FREE**

Suitable for Vegans and Vegetarian Friendly. Low in Abrasion, Activated Charcoal Helps Remove Stains From the Surface of Your Teeth, Without Harming The Enamel.

**MADE IN THE UK**
Our Products are Manufactured in the UK and Adhere to the Good Food Manufacturing (GMP) Production Standards to ensure Consistently High Quality.

# Is Activated Charcoal safe for your teeth?

Mar 18, 2019



Activated Charcoal is a popular topic at the moment, especially on social media. You may see a lot of influencers promoting various activated charcoal teeth whitening products whilst scrolling down your Instagram feed. It might look like an attractive product, but you should be aware of the safety of what you're using. Using charcoal on your teeth might seem a daunting prospect for some, and so it's important that you use a trusted and reputable brand like us!

## Where to start

Over the past decade, teeth whitening has become a global industry, with many seeking the perfect white smile through dental bleaching treatments or DIY home remedies. If you are new to this teeth whitening trend, it can be hard to know what is the safest, easiest and most cost-friendly way to whiten your teeth. Pro Teeth Whitening products tick all those boxes! We aim to provide high quality, safe and affordable teeth whitening products. Not only that, but our products are also extremely effective!

## Is it safe for my teeth?

Pro Teeth Whitening products are all naturally derived and do not contain peroxide or fluoride. Furthermore, our products are completely safe on your enamel. Our activated charcoal products naturally draws out the tannins - a staining substance found in many foods and drinks - from your teeth leaving them whiter. The activated charcoal does not absorb the calcium salts that your tooth is made of, leaving no damage to your teeth.

## What do dentists say?

Many dentists support this at home natural whitening alternative. Practising Harley Street dentist, Dr Peter McQuillan recommends Pro Teeth Whitening products as a safe and effective way to maintain your beautiful white smile. Pro Teeth Whitening teeth whitening products sufficiently remove stain build-ups we get from food and drink. Once you've got your amazing new smile, it's important to keep it in prime condition by visiting your dentist every six months for a check-up.



66.     Pro Teeth makes identical or substantially similar claims and representations about their Charcoal Dentifrices elsewhere online, including Amazon.com.[48]  For example, the following also appears on Amazon.com:



- All Natural Premium Blend Grey Coconut Teeth Whitening Activated Charcoal
- Premium Whitening Formula, Excellent For Tooth & Oral Health With No Sensitivity
- Efficient Alternative To Charcoal Teeth Whitening Toothpaste, Strips, Kits & Gels
- Unique Dental Blend Including High Strength Mineral Grey Bentonite Which Works With Activated Charcoal To Absorb Toxins Naturally & Reduces Sensitivity

- ★ NATURAL TEETH WHITENING: 100% Natural Activated Charcoal Teeth Whitening Toothpaste that helps polish the surface of your teeth to significantly whiten and brighten your smile. Our advanced formula helps to protect the enamel from toxins and stains.
- ★ REFRESHING MINT FLAVOR: The toothpaste provides a refreshing minty taste for long lasting freshness. It helps neutralise bad breath and removes stains to leave your mouth feeling clean and refreshed.
- ★ SAFE ON ENAMEL: Suitable for Vegans & Vegetarians, Fluoride Free and Peroxide Free, SLS and Sulfate Free, and low in abrasion. Our Activated Charcoal Toothpaste helps remove stains from the surface of your teeth, without harming the enamel.
- ★ SMILE WITH CONFIDENCE: Pro Teeth Whitening aims to help you feel confident in your smile so that you are prepared for day. This toothpaste removes stubborn coffee, tea, red wine or tobacco stains, so that you can be happy with your smile.
- ★ MADE IN THE UK: Our products are Manufactured in the UK and adhere to the Good Food Manufacturing (GMP) Production Standards to ensure consistently high quality.

---

[48] *See* https://www.amazon.com/Pro-Teeth-Whitening-Activated-Charcoal/dp/B01IVKWNAU/ref=sr_1_5?crid=2QXPQBBIQ8DV1&dchild=1&keywords=pro+teeth+whitening+activated+charcoal&qid=1591718403&sprefix=pro+teeth+%2Caps%2C161&sr=8-5.



**E.       Pro Teeth's Marketing Claims are Debunked or Unsubstantiated by Scientific Evidence, Misleading and/or Untrue**

**(i)      *Detoxifying and Adsorbing***

67.     Pro Teeth markets its Charcoal Dentifrices as a natural and powerful detoxifier due to the adsorptive properties of the activated charcoal ingredient. Pro Teeth touts both the paste and powder products as capable of detoxifying the mouth and consistently represents the purported detoxifying and adsorptive properties of charcoal as beneficial to oral health and even enabling specific functions, such as lifting stains and whitening teeth. On its website, Pro Teeth specifically describes the main key ingredient of its Charcoal Dentiffrices as follows: "Activated Charcoal is Charcoal which has gone through a scientific process to 'Activate' it – this process heats the charcoal and utilizes a gas to create large pores in the mineral *which traps chemicals and creates super absorptive properties*…Activated Charcoal can easily draw out the impurities." (Emphasis added.)[49] Pro Teeth goes further by claiming that its Activated Charcoal Teeth Whitening Powder

---

[49] https://www.proteethwhitening.co/pages/activated-charcoal-for-teeth-whitening (last accessed June 11, 2020).

"removes stains and discolouration from the surface of your teeth to significantly whiten and brighten your smile."[50]

68.    Pro Teeth's claims are specious and make misuse of the term "detoxification." As previously discussed, detoxification is a *medical term* that refers to emergency treatments for dangerous levels of drugs, alcohol, or poisons, like heavy metals.[51] Moreover, there are no clinical trials or peer reviewed research which suggest activated charcoal removes toxins daily when used as a supplement."[52] "Despite the marketing hype, activated charcoal has no ability to suck out the toxic chemicals from the rest of your body."[53]

69.    Even more implausible than the 'detoxifying' effects of ingestible supplements are purported 'detoxifying' properties in topically applied personal care products, such as dentifrice. The logic of employing charcoal in this context is even more attenuated and is, in fact, *wholly unsupported*. As one wellness writer has put it:

> "**At the root of the activated charcoal health fad is the misuse, or misunderstanding, of the word 'toxin.'** In a detox-crazy world, toxins are used to refer to impurities or anything undesirable in your body: **stains on your teeth**, dirt or dust on your skin, naturally present sugars in your juice, a hangover after a night out. **Personal care products (like teeth whiteners**, face masks, soaps, shampoos, and deodorants) containing activated charcoal **bank on the idea that impurities can be draw out during use**. . . But **there is little to no research to prove that the trace amounts of activated charcoal, combined with other ingredients, in these products are effective and much more than just marketing**."[54]

---

[50] *See* https://www.proteethwhitening.co/products/activated-charcoal-natural-teeth-whitening-powder.
[51] Scott Gavura, "Activated Charcoal, The Wellness Scam," *Science Based Medicine*, Aug. 8, 2019 [https://sciencebasedmedicine.org/activated-charcoal-the-wellness-scam/ ].
[52] "Activated Charcoal Uses May Be Harmful, Possibly Cancerous?," Superfoodly (July 28, 2017) [https://www.superfoodly.com/activated-charcoal-uses-side-effects/]; Scott Gavura, "Activated Charcoal, The Wellness Scam," *Science Based Medicine*, Aug. 8, 2019 [https://sciencebasedmedicine.org/activated-charcoal-the-wellness-scam/ ]; Julia Calderone, "Activated Charcoal Isn't a Magic Health Bullet," Consumer Reports (April 13, 2017) [https://consumerreports.org/dietary-supplements/activated-charcoal-fad-not-a-magic-health-bullet/].
[53] Scott Gavura, "Activated Charcoal, The Wellness Scam," *Science Based Medicine*, Aug. 8, 2019 [https://sciencebasedmedicine.org/activated-charcoal-the-wellness-scam/ ].
[54] Katie Mui, "Activated Charcoal: The Powerful Detox Ingredient You Don't Want in Your Regular Diet," GoodRx, Feb. 7, 2019 [https://www.goodrx.com/blog/what-is-activated-charcoal-detox-medication-interactions/]. (emphasis added).

70.     Despite the lack of scientific substantiation, Pro Teeth goes to great length to bolster the plausibility of its detox claims. For example, Pro Teeth characterizes the benefits and functions of charcoal as an adsorptive detoxifier on its website by explaining the absorptive qualities of activated charcoal as "a process widely used in medical applications due to [the charcoal's] incredible detoxifying properties once 'Activated.'"[55]

71.     Pro Teeth's detoxification claims are a marketing gimmick with no basis in fact. Very similar claims have been assessed by dental experts and determined to be unsupportable (see, e.g., the 2017 JADA and 2019 BDJ articles). Put simply, **there is no scientific support** "**that topical application of charcoal can provide any detoxification benefits to the teeth or oral mucosa.**"[56] **This includes "antibacterial, antifungal, or antiviral" benefits, as well as reduced caries or a more general (and ill-defined) notion of "oral detoxification**."[57] And, to the extent charcoal-based dentifrices do appear to effectuate certain purported oral hygiene or aesthetic benefits, it is not its porousness, but rather the *high abrasiveness* of the charcoal particle that enables any seemingly positive results, and in a short-sighted and risky manner.

**(ii)**     ***Naturally Whitening***

72.     Pro Teeth's whitening claims for the Charcoal Dentifrices (made on its product packaging, labeling, marketing and advertising) include but are not limited to: "activated charcoal for teeth whitening," "removes stains and discolouration from the surface of your teeth to significantly whiten and brighten your smile," "100% natural & vegan friendly teeth whitening," "get a brigher, whiter smile," "safe and effective teeth whitening," "all natural teeth whitening," "leaving you with a long lasting white smile you can be proud of," "whiten teeth," and others.

---

[55] *See* https://www.proteethwhitening.co/pages/activated-charcoal-for-teeth-whitening.
[56] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[57] *Id*.

73.     When a toothpaste or toothpowder is advertised as "whitening," most reasonable consumers believe it will leave their teeth whiter. However, dentists and researchers have warned that charcoal dentifrice companies' "whitening" claims are misleading, due to the failure to clarify the distinction between intrinsic and extrinsic whitening mechanisms. As opposed to intrinsic whiteners, the British Dental Journal explains, many "products whiten teeth, to different extents, by the removal of surface (extrinsic) stains, which may reform relatively quickly in, for example, a smoker. Typically, these products do not change the intrinsic colour of the tooth, which is largely determined by the colour of the dentine."[58]

74.     Linda Greenwell, in her 2017 article *Charcoal Toothpastes: What We Know So Far*, concluded: "[t]here is no evidence that the use of charcoal toothpaste has an effect on intrinsic (internal) staining of teeth or on intrinsic whitening of the teeth."[59] In 2019 Ms. Greenwell, as co-author *Charcoal-Containing Dentifrices* (BDJ 2019), re-affirmed the conclusion that activated charcoal "does not change the colour of the teeth other than by abrasive action similar to that of a 'smoker's toothpaste'. . . ."[60] "The common interchangeable use and misuse of the terms 'whitening' and 'bleaching' is therefore misleading and confusing to consumers and patients, with the marketing of some charcoal and other dentifrices being no exception."[61]

75.     The Pro Teeth Charcoal Dentifrices do not intrinsically whiten teeth. As such, any claimed whitening properties of the Pro Teeth Charcoal Dentifrices are limited to the removal of extrinsic surface stains, and therefore misleading.[62]

---

[58] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental J.* 697, 699 (2019).
[59] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017) [https://www.pharmaceutical-journal.com/opinion/correspondence/charcoal-toothpastes-what-we-know-so-far/20203167.article?firstPass=false].
[60] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental J.* 697, 699 (2019).
[61] *Id.*
[62] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).

76.     Pro Teeth's whitening claims are deceptive for the additional reason that it presents the Charcoal Dentifrices as possessive of "naturally safe" whitening qualities due to the unique and inherent attributes of activated charcoal – essentially that whitening is effectuated by adsorbing and lifting stains. This is misleading and deceptive. Charcoal functions as an abrasive agent. Its composition and fractal-shaped particles make it highly abrasive to tooth enamel.[63] As such, any extrinsic stain-lifting that could be viewed as 'whitening' is achieved simply by mechanical abrading of extrinsic stains, and is *not achieved from adsorptive qualities of the charcoal*; rather it is achieved by the *particularly abrasive effects of the charcoal*.

77.     Put another way, the Pro Teeth Charcoal Dentifrices work to 'whiten' teeth by abrading away the stains and deposits having the charcoal particles scrape off the surface of the teeth, i.e. the tooth enamel. The adsorptive qualities of charcoal are irrelevant in the context of purported teeth whitening, and Pro Teeth's representations in this regard are misleading and deceptive, similarly to its frivolous 'detoxifying' claims.

78.     The use of abrasives in 'whitening' toothpastes is common, and function to mechanically lift extrinsic stains, reduce the adhesion of dental biofilms and chromophores from the enamel surface, and otherwise improve discoloration and clean the teeth. However, there are numerous commonly accepted and widely used abrasives that are effective and much milder than charcoal and have undergone clinical testing as well as ADA scrutiny. Charcoal is particularly abrasive due to its unique particle shape and composition. There are no long-term clinical studies of the effects of its use, and charcoal is not in the ADA-approved list of abrasives.

79.     Moreover, long-term use of the Pro Teeth Charcoal Dentifrices could potentially result in a darkened and yellow tooth appearance. This is because when teeth are regularly brushed

---

[63] *See, e.g.,* Matthias Epple et al., "A Critical Review of Modern Concepts for Teeth Whitening," 79 *Dentistry J.*, 7 (Aug. 1, 2019) [https://www.mdpi.com/2304-6767/7/3/79/htm].

with highly abrasive substances such as charcoal, the enamel can wear down and cause the tooth's

dull, internal dentin to show through.[64] As Dr. Ada Cooper, spokesperson for the American Dental

Association, has explained: "Using materials that are too abrasive can actually make your teeth

look more yellow, because it can wear away the tooth's enamel and expose the softer, yellower

layer called dentin."[65]

80.     The removal of enamel by abrasive whitening dentifrices not only exposes the

yellowish dentin, but also causes teeth to stain even more easily in the future – with the sensitive

dentin exposed and no longer protected by enamel. This runs counter to Pro Teeth's claim: "Ideal

for the removal of stubborn stains like coffee, tea, wine & tobacco leaving you with a long lasting

white smile you can be proud of."[66]

**(iii)    *Safety and adequacy for daily, long-term dental hygiene use***

81.     The Pro Teeth Charcoal Dentifrices are claimed by Pro Teeth as "certified safe on

enamel," "safe for sensitive teeth," "no damage to your enamel," "safe on enamel," "safely and

efficiently lifting [plaque, tannins and stains] off [your teeth]," "adhere to the good manufacturing

production standards," and "tested by the global leader in product testing." Pro Teeth tells

consumers that there will be "no damage to your enamel" and that, because it is "low in abrasion,

Activated Charcoal helps remove stains from the surface of your teeth without harming the

enamel." The products are presented as "dentist approved."

---

[64] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017) ("Charcoal has long been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concerns about damage to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel.").

[65] "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/].

[66] https://Pro Teethbrand.com/collections/oral-care/products/activated-charcoal-teeth-whitening-toothpaste (last accessed December 17, 2019).

82.     Printed on the Pro Teeth Charcoal Dentifrices' packaging and throughout its marketing efforts are instructions for using the product that approximate a regular brushing routine, suggesting that Pro Teeth's claimed benefits come from brushing normally. This all sends a message that the Charcoal Dentifrices are appropriate as a consumer's primary everyday source of oral hygiene and to the exclusion of other oral care products.

### Abrasive damage to teeth, enamel, and gums

83.     While proclaiming these benefits of enamel protection and safety, while touting other benefits including cleaner teeth and better oral hygiene, Pro Teeth also fails to disclose material facts, including JADA and the BDJ both having confirmed insufficient scientific evidence to substantiate safety claims (as well as cosmetic and health benefits).

84.     Activated charcoal is known to be a highly abrasive and harmful substance to tooth enamel.[67] Multiple scientific studies have noted its abrasiveness presents a risk to enamel and gingiva in the context of oral care products. As noted in the 2017 JADA article: "[c]harcoal has been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concern about damages to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel."[68] The 2019 BDJ article again noted the risk to enamel and gingiva posed by charcoal's abrasivity.[69]

### Oral health effects from abrasive damage

85.     Moreover, the abrasive damage to tooth enamel caused by charcoal can set the stage for spiraling into additional oral health issues. It has been shown that increased surface

---

[67] *See, e.g.*, John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 785 (2017) [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)) (Concluding a charcoal dental cream was not an acceptable dental remedy "because it is a dentifrice intended for daily use that contains charcoal, a potentially harmful substance").
[68] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[69] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, (2019).

roughness of teeth creates an environment conducive to increased bacteria in the oral cavity. This, in turn, can lead to other problems and is correlated with high caries and periodontal disease.

86.     On a general level, the optimal formulated toothpaste maximizes cleaning while minimizing abrasiveness. The abrasives employed in a toothpaste should effectively polish teeth and remove biofilms and stains, but not abrade on the tooth structure itself. The findings of a controlled scientific study, published in a 2017 article, *Surface Changes of Enamel After Brushing with Charcoal Toothpaste*, confirmed that charcoal-based toothpastes are more abrasive and affecting on the surface roughness on a tooth as compared to other non-charcoal whitening toothpastes.[70] Charcoal's abrasiveness is related to its composition and its irregular "star shaped" particles.[71] The "research concluded that there were increasing surface roughness values of tooth surfaces after the use of toothpaste containing charcoal, and the increased surface roughness was statistically significant . . . ."[72] Increased surface roughness on a tooth's enamel is "a strategic place for bacteria to adhere to the tooth's surface," and "[t]he presence of bacteria in the oral cavity is one of the causes of high caries and periodontal disease risk."[73]

87.     Still more problematic, experts have noted that certain characteristics of Charcoal Toothpastes tend to prolong users' brushing time and increase brushing vigorousness, which can serve to *further exacerbate the abrasive effect* of charcoal dentifrices. The first such characteristic is the distinct black color of pastes containing charcoal. "Charcoal-containing toothpastes are black in colour and brushing off the colour tends to prolong brushing, or the use of excessive brushing force, which may lead to the abrasion of teeth."[74] The same phenomena occurs with dentifrices

---

[70] U I Pertiwi et al., *Surface Changes of Enamel After Brushing with Charcoal Toothpaste*, IOP Conf. Series: Journal of Physics: IOP Conf. Series 884 (2017) [iopscience.iop.org] (doi:10.1088/1742-6596/884/1/012002).
[71] *Id*.
[72] *Id*.
[73] *Id*.
[74] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).

claimed to have 'whitening' properties, as consumers might brush more frequently and vigorously to achieve the desired whitening more quickly, not realizing that "excessive brushing with a charcoal-based dentifrice may cause more harm than good."[75]

*Negative aesthetic results*

88.     Studies also show bad aesthetic effects in some users. "Particles of charcoal included in charcoal toothpaste may accumulate in crevices and other defects in teeth, including cracks in the teeth of older individuals."[76] For "patients with established periodontal disease," the use of charcoal-based dentifrices may result in "the accumulation of charcoal particles deep in periodontal defects and pockets, causing grey/black discoloration of the periodontal tissues."[77]

89.     Studies have also shown that the staining and discoloration caused by charcoal dentifrices can impact dental implants. When grey lines are created by the buildup of charcoal particles between dental restorations and teeth, it can ultimately "necessitate the costly replacement of the affected filings, veneers or crowns."[78]

*The replacement of widely accepted ingredients with charcoal (whose safety and efficacy has not been established) jeopardizes consumers' oral hygiene and oral health*

90.     Researchers have noted that the over-marketing of the health and safety benefits of charcoal dentifrices can cause customers to abandon fluoride toothpastes for fluoride-free varieties, believing various over-hyped and unproven claims on the purported oral hygiene properties and benefits of charcoal dentifrice. The authors of the 2019 BDJ article noted "[p]ossibly more concerning is the potential for individuals changing from the use of a regular

---

[75] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, (2019). (emphasis added).

[76] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).

[77] Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 British Dental Journal 697, (2019).

[78] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).

fluoride-containing toothpaste to the use of a charcoal toothpaste which contains no fluoride, thereby increasing their risk of caries."[79] The authors of the 2017 JADA article also raised this concern, and advised that dentists should "educate their patients about the unproven claims of oral benefits and possible health risks associated with the use of charcoal dentifrices and **the potential increased risk of developing caries with the use of these nonfluoridated . . . products**."[80]

91.     This same phenomena (of abandoning other tried and true toothpastes for the untested Charcoal Dentifrices) extends beyond just fluoride. Pro Teeth promises multiple oral hygiene benefits from regular use of the Charcoal Dentifrices and assigns unrealistic functions to the charcoal ingredient, while leaving out other ingredients known to serve said function(s).

92.     Pro Teeth claims "antiseptic" properties and that its toothpaste and mouthwash will help to safely and efficiently remove plaque, tannins and stains from teeth and toxins from the mouth, as well as numerous other claims concerning freshening bad breath, restoring confidence with fresher breath, and neutralizing bad breath bacteria. Pro Teeth claims further that its charcoal powder will help to "soothe gums, fight bacteria, reduce inflammation and add freshness."

93.     However, charcoal is not an antiseptic, and does not have antibacterial properties. While many purveyors of charcoal dentifrices claim that charcoal-based oral products unambiguously promoted antibacterial properties, "there are no reports in the literature to support this therapeutic benefit."[81] There is also no evidence-based support for any anti-inflammation properties.[82] Nor does Charcoal otherwise play a role in freshening breath or treating halitosis.[83] The 2019 BJD article states:

---

[79] Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 British Dental Journal 697, (2019).
[80] *Id*. (emphasis added).
[81] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[82] Id.
[83]

Given the adsorption capabilities of activated charcoal, which make it an antidote to acute poisoning and drug overdose, it could be assumed that it would be good constituent of a dentifrice for adsorbing the substances responsible for halitosis. Brushing with a charcoal-based dentifrice may leave the mouth feeling fresh, but such mouth freshness, possibly tempered by an earthy aftertaste of charcoal, may be short-lived, as charcoal does not counter the causes of halitosis. Furthermore, the adsorptive nature of charcoal in the dentifrices may limit the effects of flavourings, essential oils and any other constituents included in the formulation to mask mouth odour, thus limiting the effects of the dentifrices on halitosis.[84]

94.    Pro Teeth makes many claims concerning strengthening teeth and protecting enamel and gums. However, charcoal does not have these properties.  On the other hand, it is well and long-established that fluoride does. While Pro Teeth calls attention to alternative and natural dental product use as being more beneficial than using products containing fluoride, "due to suspicions that Fluoride ingestion can actually have harmful effects on the body," the BDJ has noted that "charcoal-based toothpastes… may have limited capacity to remineralise enamel, let alone increase its resistance to caries and tooth wear processes."[85]

95.    Pro Teeth has negligently and misleadingly made numerous material health and cosmetic claims that consumers reasonably relied upon in making a purchase decision on one or more of the Charcoal Dentifrices, and to their own substantial risk and damage. The BDJ has warned of this very type of situation when it comes to over-hyped charcoal dentifrices, as it found insufficient evidence to substantiate cosmetic and health benefits including "antibacterial, antifungal, or antiviral; reduced caries; tooth whitening; [and] oral detoxification."[86] Extreme marketing tactics and deceptive and false promises, in the absence of disclosures of the truth about inadequate substantiation, cause consumers to unwittingly risk their long-term oral health by

---

[84] Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 British Dental Journal 697, (2019).
[85] Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 British Dental Journal 697, (2019); John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[86] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).

purchasing and using a charcoal dentifrice in lieu of a non-charcoal product containing safe and effective ingredients. As the 2019 BDJ article authors noted:

> "The unsubstantiated claims that certain charcoal-based dentifrices, any of which are described as eco-friendly, ecological, herbal, natural, organic or pure, have antibacterial, antiseptic and/or anti-fungal qualities, may lull consumers into thinking that the use of such dentifrices may be a sustainable way to prevent or possibly even treat periodontal disease, over and above whatever claims they are inclined to believe. Such persuasion of consumers, many of whom may have established oral and dental disease, is considered to be opportunistic marketing, with little regard to the consequences of the exploitation."[87]

96.     Pro Teeth's replacement of tested ingredients, such as fluoride, with the untested ingredient of charcoal is particularly ill-advised in light of the fact that the assumed premise of charcoal's purported mode of action is not only untested and unsubstantiated, it is considered by many to be simply nonsensical: i.e., that the activated charcoal *binds* to surface stain deposits, tannins, plaque, bacteria, odors, and any other noxious or undesirable element, then *adsorbs* such elements into the porous charcoal particle and is brushed away, leaving clean and polished teeth, a detoxified mouth, and fresh breath.

### *A purported RDA Score of 77, even if accurate, does not render the Charcoal Dentifrices "Certified Safe for Enamel"*

97.     Pro Teeth presents its Charcoal Dentifrices as "certified safe on enamel," with an "RDA Score of 77!" The notion that an RDA of 77 renders a dentifrice safe is misleading, and, even if accurate, is not the conclusive standard by which a dentifrice's safety is adduced.

98.     A dentifrice's Relative Dentin Abrasivity, or RDA, is indeed a reference value concerning a dentifrice's abrasive potential. However, an RDA of 250 is an "upper limit" within the industry, and by this standard *all* dentifrices underneath 250 RDA (i.e., at or below 2.5 times

---

[87] *Id.*

the reference value) are considered "safe and effective." It is not, however, a value assessment on the overall safety and efficacy of a toothpaste.

99.     More specifically, the RDA was developed as a standardized scale to reflect a dentifrice's abrasive potential in the context of laboratory testing and manufacturing, in order to conform with methods and standards adopted by the American National Standards Institute/American Dental Association (ANSI/ADA).[88] It is in this *industrial* context that the 250 RDA serves as a benchmark for safety and effectiveness as it relates to potential abrasion.[89]

100.     While the 250 RDA benchmark is indeed critical to safety, its rather crude assessment (anything below 250 is considered safe, and anything above is unsafe) provides more of a common starting point or safety baseline. The ADA is clear that RDA "**should not be used to rank the safety of dentifrices with RDA values below 250**" because "[t]hese **values do not correspond to potential clinical changes to enamel**."[90]

101.     As such, Pro Teeth's claim of an RDA of 77, if accurate, simply reflects a safety baseline typical of all commercially available toothpastes. The RDA is not a comprehensive score or assessment of overall safety and efficacy. The evaluation of a particular dentifrice's safety and efficacy for daily use by consumers is more specific, complex and multifactorial. The RDA benchmark is a blunt categorizer, and the ADA has been explicit that, below an RDA of 250, the numerical figures themselves are not useful as valuations of safety or for comparison as to other products that also fall below the 250 RDA threshold.

---

[88] https://www.ada.org/en/member-center/oral-health-topics/toothpastes (last accessed December 5, 2019) (internal citations omitted).
[89] https://www.rdhmag.com/patient-care/article/16409242/protected-by-a-safe-rda-setting-the-record-straight-about-toothpaste-abrasivity
[90] https://www.ada.org/en/member-center/oral-health-topics/toothpastes (last accessed December 5, 2019) (internal citations omitted).

102.    Moreover, there is no clarification on what entity Pro Teeth claims to have "certified" the Charcoal Dentifrices as safe for enamel.

103.    Furthermore, Pro Teeth omits to indicate the REA, or Relative Enamel Abrasivity, which is another value assessor for the abrasivity of a dentifrice. Pro Teeth misleading misrepresents the RDA score as the ultimate assessor, and on "both enamel and dentin," which is simply not accurate or factual.

**F.      Pro Teeth Knew or Should Have Known its Material Claims and Omissions on Whitening, Detoxifying/Adsorptive Properties, Oral Hygiene Benefits and Safety were Misleading, Deceptive and/or False**

104.    Pro Teeth's Charcoal Dentifrices are subject to a federal legal and regulatory framework concerning the marketing, advertising, branding, and labeling of drugs and cosmetics. Toothpastes and toothpowders are classified as cosmetics, drugs, or a combination thereof.

105.    Pro Teeth has legal duties that include but are not limited to: (i) ensuring the safety of the Charcoal Dentifrices and disclosing safety hazards, (ii) ensuring the advertising claims and the label and packaging of the Charcoal Dentifrices are not misleading or deceptive in their claims and omissions, and (iii) possessing adequate substantiation for its claims. These obligations were created and are governed by, *inter alia*, the Federal Trade Commission Act (15 U.S.C. § 41 *et seq*.) ("FTC Act"), as well as the Federal Food, Drug and Cosmetic Act (21 U.S.C. §321 *et seq*.) ("FD&C Act"), the Fair Packaging and Labeling Act (15 U.S.C. §1451 *et seq*.) ("FP&L Act") and the regulatory frameworks created thereunder. Such laws were created in the aim to protect consumers from unfair and deceptive practices (including unsafe or deceptively labeled or packaged products), as well as to protect against unfair competition.

106.    In this pleading, Plaintiff acknowledges Pro Teeth's obligations and duties under this federal framework (and apparent non-compliance) for purposes related to the elements of the

common law negligence and state statutory causes of action asserted herein (such as the existence of various legal duties and obligatory standards of care, negligence *per se*, as well as to underscore that Pro Teeth knew or should have known of its noncompliance and that its conduct was wrongful, and that it had various duties to disclose). Plaintiff expressly disclaims any attempt to hold Pro Teeth to a higher standard than that which is required under federal law, and does not seek relief or remedy for conduct to a standard exceeding that which is required under federal law. The allegations concerning conduct that violates the FD&C Act, regulations thereunder (as well as various state statutory and regulatory schemes that parallel and mirror the same) as raised herein, are not preempted by the FD&C Act and are properly asserted in the context of the causes of action and relief sought herein.

107.    As a company engaged in the international marketing, distribution and sale of its Charcoal Dentifrices, which included the marketing, distribution and sale of its Charcoal Dentifrices in all 50 United States, Pro Teeth was or should have been aware of its legal duties under these laws, as well as the regulatory framework built thereunder. The Charcoal Dentifrices meet the definitions of a "cosmetic" as defined in the FTC and FD&C Acts as well as, in some instances a "drug" (based on the drug-like claims made concerning the prevention of disease, such as cavities or gingivitis).

108.    Section 5 of the FTC Act broadly prohibits unfair and deceptive trade practices (15 U.S.C. § 45), and Section 12 of the FTC Act prohibits the dissemination of false and misleading advertisement of food, drugs, and cosmetics (15 U.S.C. §§ 52).[91] The FTC requires advertisers possess a reasonable basis for their advertising and marketing claims, and to have substantiated all of its claims (express and implied) before it disseminates them. The requisite level of substantiation

---

[91] For purposes of Section 12 of the FTC Act, classification as a "drug" or "cosmetic" is based on the definitions at Section 15 (c) and (e) of the FTC Act, 15 U.S.C. § 55(c), (e).

for claims concerning health and safety is higher, and sometimes termed "competent and reliable scientific evidence." Additionally, when an advertiser conveys to a consumer (expressly or impliedly) that it has certain level of support or evidence for its products, it must possess such substantiation *to the actual level it claims* to have it.

109.    The FD&C Act prohibits the marketing and movement in interstate commerce of adulterated or misbranded food, drugs and cosmetics. 21 U.S.C. § 321 *et seq*. The FD&C Act defines "drug" and "cosmetic" at 21 USC §321(g)(1) and 21 USC §321(i), respectively.[92] [93]

110.    The FD&C Act provides that a drug or a cosmetic will be considered misbranded for numerous potential reasons, including if the drug or cosmetic's "[] labeling is false or misleading in any particular." 21 U.S.C. § 352(a) (misbranded drugs); 21 U.S.C. § 362(a) (misbranded cosmetics). Labeling will be deemed misleading not only because a label statement is deceptive in its representations, but also when a material fact is not revealed on a label. As to the latter, labeling will be deemed misleading if it fails to reveal facts that are material in light of other representations, or material with respect to the consequences resulting from the intended use of the product. 21 CFR 1.21 (Failure to reveal material facts).

111.    A cosmetic is also considered misbranded if its safety has not been adequately substantiated, and it does not conspicuously bear the statement: "**Warning – The safety of this product has not been determined**." 21 CFR 740.10. The safety of a cosmetic may be considered adequately substantiated if experts qualified by scientific training and experience can reasonably conclude from the available toxicological and other test data, chemical composition, and other

---

[92] The Charcoal Dentifrices at issue qualify as cosmetics, as they are fluoride-free and are intended to be applied to the human body for cleansing, beautifying, promoting attractiveness, or altering the appearance.

[93] They also qualify as drugs, to the extent that they make claims concerning disease, such as fighting or preventing cavities (anticaries claims), for example. The FDA labeling requirements for over-the-counter (OTC) anticaries drug products, for example, are specific and numerous, as well as generally prohibitive of misbranding that might mislead the consumer. See, e.g., 21 CFR 355.50 (Labeling of anticaries drug products) and 21 CFR 330.1 (General conditions for general recognition as safe, effective and not misbranded).

pertinent information that the product is not injurious to consumers under conditions of customary use and reasonably foreseeable conditions of misuse.[94]

112.    Pro Teeth was, or should have been aware of, its obligations under the above-described legal and regulatory framework yet appears to have negligently disregarded its duties as to claim substantiation, safety, marketing and advertising, as well as product package and labeling. These further underscores that it knew or should have known its acts and practices were also unlawful under state consumer protection laws.

113.    The regulatory framework also serves to underscore the existence of a duty to disclose, as well as of a special relationship in that Pro Teeth held itself out and made claims it knew were regulated, were of a certain nature requiring specialized knowledge or expertise that a reasonable consumer would not have, and that were material to purchase as well as to consumers' personal dental hygiene and maintenance of oral health.

114.    Pro Teeth knew or should have known that it did not possess the legally required substantiation for its claims.[95]

115.    Pro Teeth also knew, or should have known, that the Charcoal Dentifrices did not possess the promised benefits and safety, that Pro Teeth lacked the adequate substantiation and reasonable basis for its claims, and that there was a risk of harm. Scientific studies and journals that contradicted or questioned many of Pro Teeth's claims were published and available to Pro Teeth at the time it disseminated its claims and marketing content. Moreover, Pro Teeth would not have even had to look to academic or scientific resources, because the scientific findings were also

---

[94]   *See, e.g.,* FDA Cosmetic Labeling Guide, https://www.fda.gov/cosmetics/cosmetics-labeling-regulations/cosmetics-labeling-guide.

[95]   The FTC requires companies to "have a reasonable basis for advertising claims before they are disseminated, and "a firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act. . . ." *See* FTC Policy Statement Regarding Advertising Substantiation, appended to *In the Matter of Thompson Medical Co.,* 104 F.T.C. 648, 839 (1984), *aff'd,* 791 F.2d 189 (D.C. Cir. 1986).

reported in consumer reports and mainstream media outlets during the time the Charcoal Dentifrices were marketed and sold. Such media reports, reflecting the general concerns of dental professionals, further serve to controvert Pro Teeth's characterization that the Charcoal Dentifrices were "dentist approved." A small sampling of media coverage and public statements made during the time Pro Teeth developed, marketed, and sold its Charcoal Dentifrices includes, but is not limited to, the following:

- ABC News, June 2017, *How Safe is Activated Charcoal?* reports concerns of Dr. Upen Patel, D.D.S., because charcoal dentifrices are not evaluated by the ADA for long term use, can erode enamel, abrasiveness, gums, and tissue, and the small charcoal particles "can get stuck in your gums and in small cracks in your teeth, so you can have these little black lines in your gums and your teeth you can't get out."[96]

- Prevention.com, September 2018, *Is Charcoal Toothpaste the Answer to Whiter Teeth?,* quoted Dr. Kenneth Magid, D.D.S., adjunct clinical associate professor at NYU College of Dentistry: "Not only do charcoal toothpastes not meet the criteria that I would use to recommend them, but they may be too abrasive and damaging to teeth." "Since charcoal toothpastes aren't regulated by any agency or approved by the ADA, many of the products may be too abrasive for regular use and can possibly remove the enamel outside of the teeth or damage porcelain restorations such as veneers or crowns." "Once the enamel wears away, there's no way to regrow it, and on top of that, it can actually make your teeth look duller and darker instead of brighter. This is due to the underlying dentin showing through. . . . In addition to darkening your smile, wearing down your enamel will also make your teeth more sensitive to temperature and prone to cavities."[97]

- BBC, May 2019, *Charcoal Toothpastes 'don't whiten teeth,'* cited the British Dental Journal for the premise that "charcoal-based toothpastes, which claim to whiten teeth, are a 'marketing gimmick' which could increase the risk of tooth decay," and are "more abrasive than regular toothpastes, potentially posing a risk to the enamel and gums." The article quoted Dr. Greenwall-Cohen as stating that charcoal particles in toothpastes can "get caught up in the gums and irritate them," and also be problematic for fillings.[98]

- Harper's Bazaar, August 2018, *Is Charcoal Toothpaste Safe to Use*? (re-published in July 2019), reported on the doubts and issues raised by the British Dental Journal, noting, "[u]nlike your liver and kidneys, the teeth and gums don't perform a detoxifying function

---

[96]   Irene   Cruz,   "How   Safe   Is   Activated   Charcoal?,"   ABC   10   (June   9,   2017) [https://www.abc10.com/article/news/local/how-safe-is-activated-charcoal/447456019].
[97] Macaela Mackenzie, "Is Charcoal Toothpaste the Answer to Whiter Teeth?," Prevention (Sept. 26, 2018) [https://www.prevention.com/beauty/a23470865/charcoal-toothpaste/].
[98] "Charcoal Toothpastes 'don't whiten teeth,'" BBC: Health, May 10, 2019 [https://www.bbc.com/news/health-48216116].

of the body, and since so-called toxins aren't generally hanging out in your mouth anyway, there's not much point in using your tooth cleaning to purge them."[99]

- DailyMail, May 2019, *Charcoal-based Toothpastes do NOT whiten teeth and may lead to tooth decay as dentists warn the products are reliant on 'marketing gimmicks and folklor*e, quotes Professor Damien Walmsley, scientific adviser for the British Dental Association: "Charcoal-based toothpastes offer no silver bullets for anyone seeking a perfect smile, and come with real risks attached." "These abrasive formulations may be effective at removing surface stains, but prolonged use may also wear away tooth enamel. Research now shows it could even cause discoloration of the gums."[100]

- Dr. Ada Cooper, DDS, spokesperson for the American Dental Association, warned of charcoal toothpastes in *Beware Whitening Promise of Charcoal Toothpastes* in March 2019: "Just because something is popular doesn't mean it's safe." "Charcoal is recognized as an abrasive material to teeth and gums." "Using materials that are too abrasive can actually make your teeth look more yellow, because it can wear away the tooth's enamel and expose the softer, yellower layer called dentin."[101]

116.    It is entirely implausible that Pro Teeth, a major oral care company that possessed sophisticated marketing savvy and invested significant time, money and effort into the marketing of its products, failed to notice reported concerns from the dentistry profession, scientific community, researchers, and the media that the safety and efficacy of charcoal dentifrices were wholly unsubstantiated, and consumer use was highly risky to oral health and aesthetics. (Unlike consumers, whose attention to the claims of the oral care industry will likely be limited to time in a shopping aisle looking at product packaging, or at online retail sites that present a company's marketing claims.) Despite its various duties, and despite its knowledge (actual or imputed) of the above-described scientific journals, media reports and admonishments from the ADA and other dental experts, Pro Teeth negligently proceeded with its misleading marketing campaign.

---

[99] Lauren Hubbard & Alexandra Tunell, "Is Charcoal Toothpaste Safe to Use?," Harper's Bazaar, Aug. 14, 2018 (updated: Harper's Bazaar Staff, "Is Charcoal Toothpaste Safe to Use?," July 31, 2019) [https://www.harpersbazaar.com/beauty/health/advice/a3764/charcoal-toothpaste-pros-cons/].
[100] Victoria Allen, "Charcoal-based Toothpastes do NOT whiten teeth and may lead to tooth decay as dentists warn the products are reliant on 'marketing gimmicks and folklore," DailyMail (May 9, 2019), [https://www.dailymail.co.uk/health/article-7010219/Charcoal-based-toothpastes-NOT-whiten-teeth.html].
[101] The Family Dental Center, Mar. 2019, "Beware Whitening Promise of Charcoal Toothpastes," [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/].

117.     Moreover, in light of above sampling of statements from prominent dentists, as well as an ADA spokesperson, it is clear that Pro Teeth's claim the Charcoal Dentifrices are "dentist approved" is false and inaccurate, and not substantiated with legitimate data, such as an objective survey of dentists' observations and experience in their dental practice. Nonetheless, Pro Teeth negligently proceeded to make these claims.

118.     Red flags were also raised by Pro Teeth's own customers. Activated Charcoal Teeth Whitening Powder consumers have raised concerns online for year – citing problems that comport with those identified in dentistry studies and other reports. In a review dated May 4, 2018, Amazon user "Brandy Hartnett" reported the following after using the Pro Teeth Activated Charcoal Teeth Whitening Powder: "This has not worked at all for my son…I have had several people try it and it has not worked on anyone. It tastes gross and leaves a huge mess no matter how careful you are with it. We talked to our dentist and he said you should never use charcoal on your teeth as it harms your enamel."[102] Other verified purchasers reported the same issue, including another Amazon user "Crystal Brown" who referred to her experience with the Charcoal Powder as "Waste of Money & Very, Very Abrasive!!"[103]

119.     These online reports, coupled with the previously cited concerns raised in dentistry journals, should cause any responsible oral care business to seriously evaluate the safety and effectiveness of its products. Indeed, Pro Teeth was under a continuing duty to warn if its product poses a risk, and its duty could be triggered by new information. However, in gross negligence and

---

[102] Customer Review, amazon.com (May 4, 2018), https://www.amazon.com/product-reviews/B01IVKWNAU/ref=acr_search_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.

[103] Customer Review, amazon.com (June 19, 2018), https://www.amazon.com/product-reviews/B01IVKWNAU/ref=acr_search_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.

disregard for the safety of others, Pro Teeth failed to make disclosures on substantiation and safety, or to issue warnings or corrective labeling.

I.  **Pro Teeth Intended Consumers' Reliance and Induced Consumers' Purchase of the Charcoal Dentifrices**

120.   Pro Teeth's marketing was constructed in order to induce consumers to purchase the Charcoal Dentifrices over other products, and in some cases to do so at a price premium. The Charcoal Dentifrices are branded as "natural" with an emphasis on their being healthier, safer, and more effective alternatives as compared to other tooth whitening and oral care products, particularly those that contain fluoride.[104]

121.   The claims at issue in this Class Action Complaint – which are alleged herein as misleading, inaccurate, and/or false, as well as negligently made and lacking a proper factual basis and required evidentiary substantiation – are also the very types of claims which are essential to a consumer's decision whether to purchase one or more of the Charcoal Dentifrices. The same is true of the omissions and deceptions alleged herein, which are material to the purchase decision. Pro Teeth fails to disclose material information that, if known to a consumer, would inform their perception of the claims affirmatively made, and would affect, and did affect, the decision to make a purchase or not.

122.   Pro Teeth negligently disseminated its misleading claims, material omissions, and its false and deceptive marketing campaign, despite the capacity and likelihood to deceive reasonable consumers. It did so in order to induce reliance and the purchase of one or more of the Charcoal Dentifrices. Pro Teeth negligently and misleadingly promotes the (unsubstantiated) attributes of activated charcoal, despite warnings from dentists and the scientific community about

---

[104] Pro Teeth highlights on its website the use of Activated Charcoal in its oral care products instead of fluoride "due to suspicions that Fluoride ingestion can actually have harmful effects on the body." (*See* https://www.proteethwhitening.co/pages/activated-charcoal-for-teeth-whitening.)

charcoal dentifrices – at best a "marketing gimmick" and, at worst, harmful to teeth, dentistry implants and overall oral health.

**J.**     **Reasonable Reliance by Consumers**

123.    Each and every purchaser of the Pro Teeth Charcoal Dentifrices was exposed to Pro Teeth's negligent and misleading claims. In addition to online and print marketing and ads, the claims are printed on external cardboard packaging and product labeling.

124.    Consumers reasonably relied on Pro Teeth's claims. The ubiquitous marketing and stylistic branding together foster a reasonable expectation that Pro Teeth is a trustworthy brand, that its claims were legitimate, and that the products were safe and effective. Consumers reasonably relied on the oft-repeated claims that the Pro Teeth Charcoal Dentifrices had natural and safe whitening and detoxifying properties, as well as other dental hygiene benefits, were safe for everyday use, as well as generally appropriate, effective and not harmful in their intended use.

125.    An average consumer lacked any meaningful ability to test or practicably verify Pro Teeth's claims. Consumers cannot reasonably be expected to research and independently ascertain the truthfulness of the claims made by the sellers they pay for products.

126.    This is particularly so in the purchase of a dental product from an oral care company, and consumers can reasonably rely upon the expertise of an oral care company that introduces a dental product to the retail market and presents it as safe, effective and appropriate for dental hygiene and oral care maintenance needs, and even bacteria-fighting. Reasonable typical consumers lack sufficient training to discern the validity of such claims, which require a certain level of expertise and specialized knowledge; nor should consumers be reasonably expected to feel the need to question or investigate these types of claims.

127.    Moreover, the branding intentionally fostered a belief in Pro Teeth's conscientiousness on health, safety and wellbeing through messaging such as "trusted and reputable brand like us," and "dentist recommended. Such messaging, which also included full-refund guarantees, was also intended to inspire reliance by consumers on such fostered beliefs.

**K.    Pro Teeth's Wrongful Conduct Injured Consumers**

128.    Consumers have been harmed by these false, misleading and negligently made representations and omissions because they purchased the Pro Teeth Charcoal Dentifrices that were not as represented and were also ineffective and/or harmful. Consumers relied on Pro Teeth's claims and were induced to believe that the Pro Teeth Charcoal Dentifrices provide properties, qualities, value, and safety benefits that other "retail" toothpastes and toothpowders do not, and also that other "natural" toothpastes and toothpowders do not.

129.    Each consumer has been exposed to the same or substantially similar misleading and unlawful practices and each product contains identical or substantially similar claims, and in some cases, certain Charcoal Dentifrices were sold at a price premium. This premium is paid for an unproven and potentially harmful ingredient - charcoal.  As such, each consumer suffered the same or substantially similar injuries as the named Plaintiff.

130.    These products were not as represented and cannot deliver the promised health, dental hygiene, and cosmetic benefits, as previously discussed. For example, the mouth detox, adsorption properties and benefits Pro Teeth represented the charcoal could effectuate have no reasonable basis in fact and the promised performance and benefits (in the form of purported detox or natural whitening) simply were not, and could not have been, realized.

131.    In addition to the economic injury in the form of a price premium paid for falsely promised benefits from a falsely-advertised product, consumers have been damaged by the total

purchase price, because they purchased a dentifrice that does not provide the basic safety and oral health maintenance that other non-charcoal dentifrices do, whether similarly priced or cheaper. Because charcoal powder is unproven as safe and effective for use in dentifrice (and potentially harmful), it is not an appropriate substitute for many such ingredients. As such, the consumer is harmed in a second way that is distinct from, and in addition to, the price premium paid for nonexistent benefits of activated charcoal. Not only do the Charcoal Dentifrices fail to bring any premium or additional benefit with the charcoal ingredient or the premium price charged, the products also may not provide basic oral hygiene maintenance that would have been provided by other non-charcoal, regular toothpastes.  Consumers were damaged by the entire cost of a tube of toothpaste that was ineffective at maintenance of oral hygiene and potentially deleterious to oral health.

132.    Plaintiff and putative Class members were using oral care products that were deficient and carried significant risk due to the inclusion of charcoal. For example, they used the Charcoal Dentifrices (which had been represented as, inter alia, safe for gums, natural, healthy and effective for whitening, and non-abrasive to enamel) which were, unbeknownst to them, likely abrading the enamel on their teeth. As previously discussed, the inclusion of charcoal particles can directly damage dental implants or the gumline. Charcoal also proximately causes damage that arrives in the form of oral health issues that can arise due to failure to meet basic oral health care needs and maintenance, as well as oral health issues that can spiral as consequences of the abrasive damage caused by charcoal.

***Additional Deceptive Pricing Practices***

133.    The Pro Teeth website presents the names of all available oral care products for purchase under the "Shop" tab. By clicking on any one of the listed products, an image of the selected product becomes available and, next to the image, the purchase price.[105]

134.    One of Pro Teeth's oral care product website pages includes an image of the 98% Natural Activated Charcoal Mouthwash (Peppermint), with a purchase price of £6.99 printed on the side. This purchase price is further indicated to be a discount from an original full retail price of £9.99.[106] A similar strategy is used for the Teeth Whitening Kit, which has a purchase price of £14.99, which is further indicated to be a discount from an original full  retail price of £29.99.[107] On Amazon.com, the Charcoal Powder is advertised with a purchase price of £14.99, while further indicated to be a discount from an original full retail price of £19.99.[108]

135.    Upon information and belief, Pro Teeth has been representing prices for some or all of the Charcoal Dentifrices as discounts or reductions from original retail prices; however, there is no indication Pro Teeth has ever in fact charged the purported full retail prices. Pricing in this way (that is, at a false priced reduction), misleads customers to believe they are receiving a bargain on a premium product, when in reality the 'sale' price is the regular price. This false and misleading pricing is a deceptive and unlawful practice intended to induce consumers to purchase the product while the 'discount' applies or during the sales period. Such pricing practices also unfairly harm competitors who do not price and/or advertise their products in an unlawful and deceptive manner.

136.    Furthermore, Pro Teeth took unfair advantage of its competitors and of its consumers by collecting substantial profits as a result of numerous material omissions and false

---

[105] *See, for example* https://www.proteethwhitening.co/products/activated-charcoal-natural-teeth-whitening-powder (showing the purchase price for the Charcoal Powder next to the product image)(last accessed June 9, 2020).
[106] *See* https://www.proteethwhitening.co/collections/mouthwashes/products/activated-charcoal-natural-teeth-whitening-mouthwash-peppermint-flavour-98-naturally-derived (last accessed June 9, 2020).
[107] *See* https://www.proteethwhitening.co/products/professional-teeth-whitening-kit-with-activated-charcoal.
[108] *See* https://www.amazon.co.uk/s?k=teeth+whitening+powder&me=A38QPFBRAABE7I&ref=nb_sb_noss. (Last accessed June 11, 2020.)

and misleading claims over the benefits and safety of the Charcoal Dentifrices, and other false and misleading purported properties and attributes (such as dentist endorsement and being a premium product offered at a price discounts). Pro Teeth's misrepresentations and omissions concerned material characteristics of its products, and it charged a higher price for such characteristics. Plaintiff and purported class members paid a premium price for the mislabeled products.

137.   Pro Teeth has done so with knowledge not only that its claims were unsubstantiated, but it also knew or should have known of the potential for serious harm caused by the use of charcoal in dentifrice. Pro Teeth's conduct is deceptive, unethical, in violation of public policy, wanton and recklessly indifferent to others, and substantially injurious to consumers as well as to competitors. Pro Teeth should not be permitted to retain its substantial benefit obtained from its injurious misconduct, which in justice and equity belong to Plaintiff and members of the Classes, and caused them injury; nor should it, in justice and equity, be permitted to continue to benefit from its unfair and deceptive practices.

138.   Without remedy (including injunctive relief), Plaintiff, members of the putative Classes, and other consumers, cannot be confident that the labeling of products and pricing will be truthful and not misleading when they are making purchasing decisions in the future.

## VI.   CAUSES OF ACTION

### COUNT ONE
*Nationwide Class*
**Breach of Express Warranty**

139.   Plaintiff re-asserts and references the allegations in this Complaint and incorporates them as if fully set forth herein.

140.   Plaintiff brings this claim under Article 2 of the Uniform Commercial Code (the "UCC") (as codified under Rhode Island law at 6A R.I. Gen. Laws § 6A-1-101 *et. seq.* and other

states where members of the Nationwide Class reside), and does so on behalf of herself and the members of the Nationwide Class.[109]

141.     Under Section 2-313 of the UCC, affirmations of fact or promise made by the seller to the buyer, which relate to the goods and are a basis of the bargain, create an express warranty that the goods shall conform to the affirmation or promise. The Rhode Island equivalent of this section is R.I. Gen. Laws §6A-2-313.

142.     In connection with the sale of the Charcoal Dentifrices, Pro Teeth issued written express warranties concerning the Charcoal Dentifrices. Express warranties concerning the Charcoal Dentifrices included, but were not limited to:

- "whitening"

- "certified safe on enamel," "proven safe on enamel," and "safe for enamel"

- "safe on enamel and fluoride free"

- "enamel-friendly"

- "non-abrasive" and "very low abrasive score"

- "suitable for even those with sensitive teeth and gums"

- "removes stains," "polishes teeth," "brightens discoloration," and "removes stains and discolouration from the surface of your teeth to significantly whiten and brighten your smile"

- "Activated Charcoal loves tannins! Yep, that's right – what makes Activated Charcoal so powerful in Teeth Whitening is it's [sic] natural ability to draw these tannins away from your teeth leaving them whiter looking"

- "safe and effective"

---

[109] Alternatively, an express warranty claim is brought on behalf of alternatively proposed nationwide subclasses for each of the product types – the Charcoal Powder, the Charcoal Mouthwash, the Charcoal Toothpaste, the Charcoal Whitening Strips, and the Charcoal Gels. Express warranty claims as to each are nearly identical and substantially similar, but as indicated, the wording of and predominance of certain claims may be specific as to each.

- "naturally safe way to polish teeth"

- "the activated charcoal does not absorb the calcium salts that your tooth is made of, leaving no damage to your teeth"

- "ideal for dental use and non-abrasive"

- "suitable for even those with sensitive teeth"

- "detoxifying properties," "natural ingredients which work together to create a detoxifying solution that helps remove stains, bad breath and leaves your mouth feeling fresh"

- "attaches to toxins and impurities in the body to draw them out…It works in just the same way on plaque, tannins and stains on teeth – safely and efficiently lifting these off!"

- "freshens breath," "remove bad breath" and "destroys bad breath"

- "UK dentist approved"[110]

- "many dentists support this at home natural whitening alternative"

- "all day protection from toxins and stains"

143.    Pro Teeth made its affirmations of fact or promise to Plaintiff and members of the Nationwide Class on the product labelling and packaging of the Pro Teeth Charcoal Dentifrices, on Pro Teeth's website(s), as well as in its listings and product descriptions on other online retail sites (including Amazon) and in print advertising. These affirmations of fact or promise, on the products themselves, as well as online, were disseminated throughout the United States and were seen by Plaintiff and members of the Class during the purchase process.

144.    These affirmations of fact or promise were material and informative to the product and the purchase decision, and Pro Teeth made them in order to induce the purchase. Pro Teeth

---

[110] Pro Teeth expressly so stated concerning the Charcoal Toothpastes.

knew that Plaintiff and Class members were ignorant of the veracity of these promises and assertions of fact.

145.    Plaintiff and Class members reasonably and justifiably relied upon the express warranties, believing that the products would conform.

146.    These affirmations of fact or promise were material and became part of the basis of the bargain between the Pro Teeth on one hand, and Plaintiff and Class members on the other, thereby creating express warranties that the Pro Teeth Charcoal Dentifrices would conform to Pro Teeth's affirmations of fact, representations, and promises.

147.    Plaintiff and Class members were in direct privity with Defendant and/or its agents or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

148.    Plaintiff and Class members reasonably and justifiably relied on Pro Teeth's express warranties, believing that the Charcoal Dentifrices they purchased would conform to the express warranties.

149.    Pro Teeth breached its express warranties because the Charcoal Dentifrices do not, in fact conform to the affirmations of fact or promise, and the Charcoal Dentifrices do not perform as expressly warranted.

150.    Plaintiff and Class members were injured as a direct and proximate result of Pro Teeth's breach because the Plaintiff and Class members did not receive goods as warranted by Pro Teeth. Plaintiff and Class members did not receive the benefit of the bargain, as the Charcoal Dentifrices did not have the promised benefits, effectiveness, safety, value or other properties as represented.  The Plaintiff and Class members suffered injuries in part because, had they known the truth about the Charcoal Dentifrices and the actual, confirmed science behind activated

charcoal, they would not have purchased the Pro Teeth Charcoal Dentifrices, as compared to similar products that did conform as warranted and represented.

151.    As a direct and proximate result of Pro Teeth's breaches of express warranty, Plaintiff and Class members have been damaged by the difference in value between the Charcoal Dentifrices as advertised and the Charcoal Dentifrices as actually sold, in an amount to be proven at trial.

**COUNT TWO**
*Nationwide Class*
**Implied Warranty of Merchantability**

152.    Plaintiff re-asserts and references the allegations in this Complaint and incorporates them as if fully set forth herein.

153.    Plaintiff brings this claim under Article 2 of the UCC (as codified under Rhode Island law at 6A R.I. Gen. Laws § 6A-1-101 *et. seq.* and other states where members of the Nationwide Class reside) and does so on behalf of herself and members of the Nationwide Class.

154.    Under Section 2-314 of the UCC, a warranty that the goods shall be merchantable is implied in the contract for their sale, if the seller is a merchant with respect to goods of that kind. To be considered merchantable, the good must be safe and fit for the intended use and conform to the promise or affirmations of fact made on the label or packaging. The Rhode Island equivalent of this section is R.I. Gen. Laws § 6A-2-314.

155.    In this case, Pro Teeth qualifies as a merchant, and a warranty of merchantability was implied in the sale of Charcoal Dentifrices to the Plaintiff and Class members. Pro Teeth sold the Charcoal Dentifrices clearly labeled as having certain characteristics. Pro Teeth knew the use for which the Charcoal Dentifrices were intended, and impliedly warranted them to be of merchantable quality, safe, and fit for use.

156.     With each sale of falsely labeled Charcoal Dentifrice to the Plaintiff and Class members, Pro Teeth has breached the implied warranty of merchantability.

157.     Plaintiff and Class members reasonably and justifiably relied on Pro Teeth's affirmations, as well as the projected trustworthiness of the brand and the company. Had the Plaintiff and Class members known of the true nature of the Charcoal Dentifrices and that they were not of merchantable quality, not safe or fit for their intended use, and not in conformance with Pro Teeth's representations, they would not have purchased them, or they would not have been willing to pay the inflated price.

158.     As a direct and proximate result of Pro Teeth's breaches of implied warranty of merchantability, Plaintiff and the Class members have been damaged by the difference in value between the Charcoal Dentifrices as advertised and the Charcoal Dentifrices as actually sold, in an amount to be proven at trial.

**COUNT THREE**
*Nationwide Class*
**Negligent and Grossly Negligent Misrepresentations and Material Omissions**

159.     Plaintiff re-asserts and references the allegations in this Complaint and incorporates them as if fully set forth herein.

160.     Plaintiff brings this Count under common law for negligent and grossly negligent misrepresentation and does so on behalf of herself and the members of the Nationwide Class.

161.     Pro Teeth had a duty not to conduct itself unlawfully or in contravention of public policy.

162.     Pro Teeth had a duty to provide honest, accurate, non-deceptive and lawful information concerning the Charcoal Dentifrices so that consumers could make informed decisions regarding the purchase of one or more of the Charcoal Dentifrices. This included information

concerning the safety, efficacy, requisite substantiation, benefits, and other properties of the Charcoal Dentifrices. Pro Teeth had statutory duties as to product labelling and advertising claims on the Charcoal Dentifrices, which included but were not limited to, the duty to be truthful and non-misleading, to have a reasonable basis and proper substantiation for the claims made, and in proportion to any claimed level of substantiation.

163.    The Charcoal Dentifrices constitute "cosmetics" under federal law (both the FTC Act and the FD&C Act). Federal statutory law, as well as FTC and FDA rules and regulations, impose certain obligations in connection with the labeling and dissemination of cosmetics and their marketing and advertising. Similarly, multiple state laws have incorporated applicable federal regulations and establish regulatory schemes that parallel and mirror the federal framework. (These obligations are raised herein not in order to seek to enforce any standard of conduct that exceeds that which is required under the federal framework.) These delineate a clear standard of care and duties.

164.    Federal statutory law, as well as FTC and FDA rules and regulations required that Pro Teeth have a reasonable basis and competent substantiation for the various claims and representations it made concerning the Charcoal Dentifrices in the labeling, packaging, advertisements and marketing of the Charcoal Dentifrices and to have it at the time the claims were made.

165.    Pro Teeth had a duty to provide a warning to consumers if and when it lacked adequate substantiation of its claims, and/or a duty to warn of the risk and potential harm from use of its products, per federal rules and regulations, including 21 CFR 740.10.

166.    Pro Teeth had a federally imposed duty not to misbrand the Charcoal Dentifrices or other mislabel them in contravention of federal laws, rules and regulations. See, e.g., 21 U.S.C.

§ 263, 21 CFR 1.21, 21 U.S.C. § 331, and 16 CFR 500-503. Pursuant to the FTC Act, Pro Teeth had a duty not to disseminate false or materially misleading advertisements of drugs and cosmetics. See, e.g., 15 U.S.C. § 52, and 15 U.S.C. § 55(a)(1). Pro Teeth had a duty not to engage in unfair and deceptive trade practices in violation of Section 5 of the FTC Act. 15 U.S.C. § 45.

167.    Pro Teeth also presented itself as having specialized, expert, or at least superior knowledge of oral health care needs, dental hygiene, and effective and safe dentifrices. Pro Teeth created a special relationship and attendant duties by holding itself out to consumers as having such expertise and specialized knowledge. Pro Teeth made and widely disseminated claims on the purported oral health maintenance, dental hygiene and cosmetic benefits of the Charcoal Dentifrices. Pro Teeth held itself out to have a level of expertise and specialized knowledge in order to make such claims. It did so with the awareness that such claims were of a special and material nature, and also that a typical reasonable consumer would not possess, and cannot be expected to possess, the requisite expertise or specialized knowledge in order to discern the veracity of such claims. Pro Teeth knew that such claims would be, and were in fact, material to a consumer's purchase decision, as well as consumers' ongoing dental hygiene and oral health. Pro Teeth therefore had a special relationship to its consumers as to said claims; which created duties, including but not limited to a duty not to mislead and a duty to disclose.

168.    Despite its duties and in breach of the same, Pro Teeth negligently made false and misleading representations and material omissions to Plaintiff and the Nationwide Class members, and/or omitted the disclosure of material facts its product packaging, labeling, marketing and advertising. Pro Teeth also knew, or in the exercise of reasonable care, should have known, that consumers would be misled by these misrepresentations and omissions. Pro Teeth acted without reasonable grounds for believing the representations were true. Pro Teeth also knew or should have

known the omissions rendered its claims on the Charcoal Dentifrices false or misleading. Pro Teeth intended to induce reliance of the Plaintiff and the Nationwide Class members with is representations and omissions.

169.    Pro Teeth also owed a duty of care to the Plaintiff and the Nationwide Class members to give appropriate warnings about all dangers and risks associated with the intended use of the Charcoal Dentifrices, of which it was or should have been aware. Pro Teeth was under a continuing duty to warn and instruct the intended and foreseeable consumers of the Charcoal Dentifrices, including Plaintiff and the Nationwide Class members, of the same.

170.    Pro Teeth's material misrepresentations and misleading and deceptive claims include, but are not limited to, its claims that the Charcoal Dentifrices: (i) whiten teeth naturally, effectively, and safely; (ii) detoxify the mouth and have adsorptive properties that whiten teeth, freshen breath, lift stains, remove plaque and provide other dental hygiene, oral health, and cosmetic benefits; (iii) are safe, effective, and generally beneficial to oral health with long-term daily use; (iv) are certified safe for enamel; (v) are safe for sensitive teeth and gums; (vi) strengthen teeth and enamel; (vii) are dentist approved and recommended; and (viii) are offered at a price reduction.

171.    Pro Teeth also omitted material facts that it was under a duty to disclose to consumers, including that (i) its safety and efficacy claims lacked a reasonable factual basis and/or credible and competent scientific substantiation; (ii) the safety of the Charcoal Dentifrices had not been evaluated for long-term use, (iii) the safety and effectiveness of charcoal for use in dentifrice was counter-indicated in scientific literature and may in fact be detrimental and harmful to oral health, dental hygiene, and aesthetics.

172.    Pro Teeth failed to disclose the lack of requisite substantiation to consumers, and also failed to warn consumers of risk or potential harm. Pro Teeth was negligent and breached its duty of care by negligently failing to give adequate disclosures and warnings. Pro Teeth knew that Plaintiff and the Nationwide Class members were ignorant of and/or could not reasonably be aware of these risks or of the other concealed and/or suppressed facts and information. Pro Teeth knowingly failed to disclose and did so knowing of the materiality of such omission and did so with the intent to induce reliance and purchase.

173.    Pro Teeth was negligent and breached its duty of care by making the afore-described misleading and material misrepresentations, and it did so knowing that they lacked the requisite substantiation and/or were baseless and lacking credibility and/or false or misleading, and did so with the intent to induce reliance and purchase, and to do so at a significant price premium compared to other comparable products on the market that did not contain charcoal (and also as to other products that did contain charcoal).

174.    Plaintiff and Nationwide Class members reasonably and justifiably relied upon the Pro Teeth's negligent and unsubstantiated misrepresentations and Pro Teeth's suppression and omission of material information, which were in violation of Pro Teeth's duties, and Plaintiff and members of the Nationwide Class have been damaged thereby. Had Plaintiff and members of the Class known the truth concerning the claims and omissions on the Charcoal Dentifrices, they would not have paid a substantial price premium for the products, and in fact likely would not have paid anything at all for the products.

175.    As a direct and proximate result of Pro Teeth's negligent breach of duties and wrongful conduct, Plaintiff and Nationwide Class members have suffered, and continue to suffer,

injury, and have sustain damages in an amount to be determined at trial, including but not limited to the amounts paid for the Pro Teeth Charcoal Dentifrices.

176.   Pro Teeth knew or should have known that its conduct was unfair or deceptive, and/or prohibited by statute or rule.

177.   Pro Teeth grossly failed to exercise due care and acted in reckless disregard of its duties. Pro Teeth knowingly prioritized its own profits over the safety and well-being of consumers who purchased one or more of the Charcoal Dentifrices and did so in reliance on material claims concerning oral health, cosmetic benefits and safety. Pro Teeth was grossly negligent when it misrepresented the Charcoal Dentifrices in its marketing, labeling and/or sale of the Charcoal Dentifrices, negligently failed to warn, and committed other failures in breach of its standard of care to potential consumers of its oral health care products. As shown by the allegations herein, Pro Teeth consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others. Pro Teeth's gross negligence caused damage and injury-in-fact to Plaintiff and members of the Nationwide Class as a result.

178.   Plaintiff, on behalf of herself and the members of the Nationwide Class, seeks actual damages, punitive damages, restitution, injunction, and any other equitable relief that may be appropriate, as further pled herein.

### COUNT FOUR
***Alternative Nationwide Class, or alternative subclass(es)***
**Violation of Rhode Island Unfair Trade Practice and Consumer Protection Act § 6-13.1-1 *et seq.*, and/or Violations of Materially Similar State Consumer Protection and Deceptive Trade Practices Laws**

179.   Plaintiff re-asserts and references the allegations in this Complaint, and incorporates them as if fully set forth herein.

180.    Pro Teeth's acts, omissions, and practices described herein are in violation of multiple states' consumer protection, unfair competition and deceptive trade practices laws that may apply to currently unknown members of the Nationwide Class who made their purchase in U.S. states other than Rhode Island. For purposes of manageability, and to the extent the same questions of fact and law predominate, the Rhode Island Unfair Trade Practice and Consumer Protection Act (the "Act") is pled herein. Alternatively, and as a separate and alternative theory of recovery to the other Counts alleged herein, various subclasses might be created for the application of other states' laws, or to be grouped based on materially identical state laws.

181.    Plaintiff brings this claim alternatively on behalf of a putative set of subclasses or alternative nationwide class, loosely termed the Classes herein.

182.    The Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 6 R.I. Gen. Laws § 6-13.1-2.

183.    In construing the Act, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1)." 6 R.I. Gen. Laws § 6-13.1-3.

184.    Pro Teeth has engaged in a pattern of business practices that are unfair, deceptive, unconscionable and anti-competitive, and that affected Plaintiff and members of the Classes, in violation of the Act. Pro Teeth's conduct also violates other laws, rules and regulations that protect consumers and/or prohibit unfair methods of competition, unfair or deceptive acts or practices, and such violations constitute *per se* violations of the Act. 6 R.I. Gen. Laws §§ 6-13.1-1(6) and 6-13.1-2.

185.    Plaintiff is a "person" within the meaning of the Act. 6 R.I. Gen. Laws § 6-13.1-1(3).

186.     Pro Teeth is engaged in "trade" and "commerce" within the meaning of 6 R.I. Gen. Laws § 6-13.1-1(5).

187.     Pro Teeth's unlawful acts and practices include, but are not limited to, its misrepresentations and deceptive claims that the Charcoal Dentifrices (i) whiten teeth naturally, effectively, and safely; (ii) detoxify the mouth and have adsorptive properties that whiten teeth, freshen breath, lift stains, remove plaque and provide other dental hygiene, oral health, and cosmetic benefits; (iii) are safe, effective, and generally beneficial to oral health with long-term daily use; (iv) are certified or proven safe for enamel; (v) are safe for sensitive teeth and gums; (vi) strengthen teeth and enamel; (vii) are dentist approved and recommended; and (viii) are offered at a price reduction.

188.     Pro Teeth also omitted the disclosure of material facts to consumers concerning the Pro Teeth Charcoal Dentifrices, including that (i) its safety and efficacy claims lacked a reasonable factual basis and/or credible and competent scientific substantiation; (ii) the safety of the Charcoal Dentifrices had not been evaluated for long-term use, (iii) the safety and effectiveness of charcoal for use in dentifrice was counter-indicated in scientific literature and may in fact be detrimental and harmful to oral health, dental hygiene, and aesthetics.

189.     Pro Teeth's conduct and practices were likely to deceive a reasonable consumer acting reasonably in the circumstances.

190.     Pro Teeth's misrepresentations and omissions and other practices were intended to induce consumers, including Plaintiff and members of the Classes, to purchase the Charcoal Dentifrices.

191.     Pro Teeth's conduct constituted unfair and deceptive trade practices in violation of Section 5 of the FTC Act. 15 U.S.C. § 45. Pro Teeth's representations, omissions and other

practices were material and likely to mislead a consumer acting reasonably in the circumstances, and its deception caused the Plaintiff and Class members to reach false beliefs about the Charcoal Dentifrices, and also affected their reasonable decision to purchase.

192.   Pro Teeth's conduct violated the FTC Act's prohibition against the dissemination of false or misleading advertisements of food, drugs and cosmetics. 15 U.S.C. § 52. The term "false advertisement" means an advertisement, other than labeling, which is misleading in a material respect. 15 U.S.C. § 55(a)(1). Pro Teeth made many false and unsubstantiated claims in its advertising, and furthermore, claimed to have a level of substantiation or support which it did not in fact possess.

193.   Pro Teeth caused the Charcoal Dentifrices to be misbranded as defined under 21 U.S.C. § 263 and under 21 CFR 1.21, and otherwise mislabeled the Charcoal Dentifrices in contravention of federal laws, rules and regulations.

194.   Pro Teeth violated the Fair Packaging and Labeling Act and the FTC and FDA regulations implementing it. 16 CFR 500-503.

195.   Pro Teeth's conduct violated the FD&C Act's prohibition on the marketing and movement in interstate commerce of misbranded cosmetics. 21 U.S.C. § 331.

196.   Pro Teeth's conduct violated FTC and FDA rules and regulations requiring that Pro Teeth have a reasonable basis and competent substantiation for the various claims and representations it made concerning the Charcoal Dentifrices in the labeling, packaging, advertisements and marketing of the Charcoal Dentifrices.

197.   Pro Teeth failed to provide a warning to consumers that it lacked adequate substantiation of its claims, and/or to warn of the risk and potential harm from use of its products, in violation of federal rules and regulations including 21 CFR 740.10.

198.    Pro Teeth's pricing and advertising practices violated FTC Rules concerning

deceptive pricing at 16 CFR 233.

199.    Pro Teeth knew or should have known that its conduct was unfair or deceptive,

and/or prohibited by rule.

200.    As a direct and proximate result of Pro Teeth's statutory violations and deceptive,

misleading and unfair practices, Plaintiff and the members of the Classes have been aggrieved,

injured and suffered damages in the amount of the purchase price(s) of the Pro Teeth Charcoal

Dentifrice(s) they purchased and/or the price premium paid.

201.    Pro Teeth has engaged in, and continues to engage in, unfair and deceptive practices

that offend public policies, and are immoral, unethical, unscrupulous and substantially injurious to

consumers. Plaintiff and members of the Classes risk irreparable injury as a result of Pro Teeth's

violations of the Act, and these violations present a continuing risk to Plaintiff, the Classes, and

the general public. Pro Teeth's unlawful acts and practices complained of herein affect the public

interest, consumer safety and the competitive market.

202.    Pursuant to 6 R.I. Gen. Laws § 6-13.1-5.2, Plaintiff and the Classes make claims

for damages, attorneys' fees and costs and seek a declaratory judgment and court order enjoining

the wrongful acts and practices of Pro Teeth.

203.    Plaintiff and the Classes also seek an order for the restitution and disgorgement of

Pro Teeth's ill-gotten gains, and for statutory penalties of $10,000 *per violation* for Pro Teeth's

willful violations of the terms of an injunction issued under § 6-13.1-5 of the Act (6 R.I. Gen. Laws

§ 6-13.1-8.), and for any other just and proper relief available under the Act.

204.    Alternatively, Plaintiff alleges that Pro Teeth violated the substantive laws of all or

some of the 50 states and United States territories where consumers reside, and seeks recovery and

other relief thereunder, or alternatively under other materially identical state laws as may be applied to alternative subclass(es) comprised of Class members from states deemed to have materially identical state laws.

**COUNT FIVE**
***Nationwide Class***
**Unjust Enrichment**

205.    Plaintiff re-asserts and references the allegations in this Complaint and incorporates them as if fully set forth herein.

206.    Plaintiff brings this Count on behalf of herself and the members of the Nationwide Class.

207.    As a result of Pro Teeth's deceptive, fraudulent and misleading labeling, advertising, marketing campaign, and sales of the Charcoal Dentifrices, Pro Teeth induced Plaintiff and Nationwide Class members to purchase the Charcoal Dentifrices, and Pro Teeth unjustly retained a benefit in the form of the monies paid by the Plaintiff and the Nationwide Class members, and to their detriment.

208.    Charcoal Dentifrices did not have the benefits, safety, efficacy, requisite substantiation, true value or other properties and characteristics that Pro Teeth represented them to have. Had Plaintiff and the Class members known the truth about the Charcoal Dentifrices and about Pro Teeth's misrepresentations and omissions, they would not have purchased the products. They were damaged as a direct and proximate result of Pro Teeth's deceptive and unfair practices.

209.    Pro Teeth accepted this unjust benefit in the form of monies paid as a result of Pro Teeth's deceptive and unfair practices.

210.     Because the Pro Teeth Charcoal Dentifrices were not as Pro Teeth purported them to be, it is unequitable and unjust to permit Pro Teeth to retain its ill-gotten financial benefits from the sale of the Charcoal Dentifrices.

211.     Pro Teeth was unjustly enriched at the expense of Plaintiff and other members of the Nationwide Class, through the purchase price payments for the Charcoal Dentifrices, and as such, Pro Teeth's retention of this benefit violates the fundamental principles of justice, equity and good conscience.

212.     Therefore, Plaintiff and the Class members seek disgorgement and restitution of such ill-gotten gains and financial benefits, in an amount to be determined at trial, and further ask that the monies paid be returned with interest.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated in the Nationwide Class and the RI Subclass and any other created subclasses, pray for relief as follows:

(a) Certification of this case as a class action, and of the Nationwide Class as well as the RI Subclass proposed herein (and any other subclasses) under the Federal Rules of Civil Procedure, designation of the Plaintiff as the representative of the Nationwide Class, of Plaintiff Roussel as the representative of the RI Subclass, and appointment of the undersigned counsel as counsel for all of the Classes;

(b) An order enjoining Defendant from making further misrepresentations regarding the Pro Teeth Charcoal Dentifrices, including but not limited to statements that the Charcoal Dentifrices:

    a.   Naturally and safely whiten teeth;

    b.   Detoxify the mouth;

      c.  Have adsorptive properties that provide dental hygiene, oral health or cosmetic benefits;

      d.  Are safe for long-term daily use;

      e.  Promote and protect oral health;

      f.  Are certified or proven safe for enamel;

      g.  Are safe for sensitive teeth and gums;

      h.  Are dentist approved; and

      i.  Are offered at a price reduction.

(c) An order requiring Defendant to issue appropriate corrective advertisements, and to retract its prior false and misleading claims;

(d) Restitution, disgorgement, refund and/or return of all monies, revenues and profits obtained by Defendant by means of misleading, deceptive and unlawful acts or practices;

(e) Actual damages in an amount to be determined at trial;

(f) Statutory damages in the maximum amount provided by law;

(g) Punitive damages;

(h) Costs, expenses, and reasonable attorneys' fees pursuant to applicable state statutes;

(i) Pre-judgment and post-judgment interest; and

(j) All such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff and the Classes hereby demand a jury trial of the claims asserted in this Complaint.

Dated: June 22, 2020

Respectfully submitted,

/s/ *William B. Federman*
William B. Federman
(OBA # 2853)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

*Counsel for Plaintiff Chelsea Roussel and the Proposed Classes, Pro Hac Vice Admission Pending*

/s/ *Christopher E. Hultquist*
Christopher E. Hultquist (R.I. Bar # 5264)
Hultquist Law, P.C.
56 Pine Street, Suite 200
Providence, RI 02903
Tel: (401) 383-6650
Fax: (401) 274-2780
chris@hultquist-law.com

*Local Counsel for Plaintiff Chelsea Roussel and the Proposed Classes*